**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

**Securities Investor Protection Corporation, Applicant,**

**v.**

**Robert E. WICK, d/b/a Robert E. Wick Company, Defendant.**

**No. 72 C 647.**

United States District Court, N. D. Illinois, E. D.

March 15, 1973.

**314**

John I. Mayer, William D. Goldsberry, William M. Hegan, S. E. C., Chicago, Ill., for S. E. C.

J. Kirk Windle, Boodell, Sears, Sugrue, Giambalvo & Crowley, Chicago, Ill., for Trustee.

Barry Freeman, Peterson, Ross, Rall, Barber & Seidel, Chicago, Ill., for Avenue Bank.

## MEMORANDUM OPINION AND ORDER

McGARR, District Judge.

The Securities and Exchange Commission filed a complaint against Robert E. Wick, charging the defendant with numerous violations of the Securities Acts of 1933 and 1934. The complaint states: "Defendant Robert E. Wick d/b/a Robert E. Wick Company and Robert E. Wick Associates is insolvent and is failing to meet its obligations to customers". Count III of the pleading specifically charges Wick with violation of Section 15(c), Rule B–1 of the Securities Act of 1934. That section and rule declare that the aggregated indebtedness of a broker or dealer cannot exceed 2,000 percentum of his net capital and he must maintain a net capital account of not less than $5,000.

In liquidating the defendant's assets, an assertion has been made to this Court by the Securities Investor Protection Corporation (S.I.P.C.), of which Robert Wick is a member, that since the defendant was engaged in the business of a broker-dealer as a sole proprietor, not only are his business assets subject to liquidation but also his personal assets. The Court-appointed trustee, J. Kirk Windle, contends that the Securities Investor Protection Act (S.I.P.A.) 15 U.S.C. Section 78aaa et seq., has changed the basic concepts controlling the liquidation of broker-dealers. Trustee Windle relies on Section 78fff(a)(4) of the Act (15 U.S.C.), which states: "The purposes of any proceeding in which a trustee has been appointed under section 78eee(b)(3) of this title (hereinafter in this section referred to as a liquidation proceeding) shall be: (4) to liquidate the business of the debtor." From this statement, Trustee Windle contends that the liquidation of defendant Wick's business enterprises is limited to the business assets available therein. The trustee further points out a number of objectionable consequences that would result if the S.I.P.A. required a total liquidation of business as well as personal assets.

While the trustee is correct in his reading of Section 78fff(a)(4), the fact that the statute directs the liquidation of a "business" connotes very little in terms of the extent of the liquidation, until the form of the business is ascertained. It is basic business law, discussed later in this opinion, that different business forms invoke different legal consequences, one of which is the differing financial liability of the owner.

Returning to a consideration of the meaning of Section 78fff(a)(4), it is clear from the language, as well as the history and purpose of the Act, that the S.I.P.A. does not supersede the provisions of the Bankruptcy Act which heretofore governed the manner and method by which an insolvent broker-dealer's business was liquidated. Pre-enactment observations dealing with the objective of the Securities Investor Protection legislation point out that:

"The primary purpose of the reported bill is to provide protection for the investors if the broker-dealer with whom they are doing business encounters financial troubles.

"In addition, the legislation mandates a general upgrading of the financial responsibility requirements of brokers and dealers to eliminate, to the maximum extent possible, the risks which lead to customer loss."
3 U.S.Code, Cong. and Admin.News, 91st Congress, 2d Session, p. 5254 (1970).

Within the same report, the relationships between new legislation and the

practical aspects of liquidation proceedings are discussed:

"In general, the court in which an application is filed is vested with the powers of a court in a chapter X reorganization and certain powers of a trustee in bankruptcy." ibid at 5264.

Section 78fff(c)(1) of the S.I.P.A., 15 U.S.C., gives full effect to the legislative comments that accompanied the bill:

"Except as inconsistent with the provisions of this chapter and except that in no event shall a plan of reorganization be formulated, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under, the provisions of chapter X and such of the provisions (other than section 96(e) of Title 11) of chapters I to VII, inclusive, of the Bankruptcy Act as section 502 of Title 11 would make applicable if an order of the court had been entered directing that the bankruptcy be proceeded with pursuant to the provisions of such chapters I to VII, inclusive."

15 U.S.C. § 78fff(c)(1).

██ In view of this clear legislative intent, the argument that the S.I.P. A. was intended to supplant the Bankruptcy Act in broker-dealer liquidation proceedings must be rejected. Rather, the effect of the S.I.P.A. upon the Bankruptcy Act is strictly limited. Only those sections which would frustrate the ability of the Securities Investor Protection Corporation to protect the customer's funds in a manner analogous to the similar Federal Savings and Loan Insurance Corporation are superseded by sections of the S.I.P.A. more consistent with this legislative purpose.

█ Consequently, once a broker-dealer falls below the solvency standards established by the Securities and Exchange Commission, the subsequent liquidation of his assets for the benefit of creditors proceeds under the Bankruptcy Act. Whether the bankrupt's estate is comprised solely of the available business assets or encompasses his total personal estate depends upon the nature and legal form of the business.

█ The brokerage business or businesses of Robert Wick are sole proprietorships. There was no business entity incorporated to differentiate Wick the individual from Wick the business. It is basic business law that a sole proprietor does not enjoy a limited degree of liability based on the initial funding for the business. There is no distinction between the capital provided to maintain the business and the total capital owned personally by the sole proprietor outside his business. Wick's business assets and Wick's personal assets are legally a single financial estate.

This business principle was properly applied in determining the necessary capital required by a sole proprietor to maintain a solvent business consistent with SEC regulations.

"As indicated earlier, there are special considerations under the rule with respect to determining the 'net capital' position of a sole proprietor-broker-dealer. For purposes of computing 'aggregate indebtedness' and 'net capital' a broker or dealer who is a sole proprietor must also take into account his personal assets and liabilities not related to the business; and where he conducts some other business in addition to the securities business, the assets and liabilities of such other business must also be taken into account.

"A sole proprietor-broker-dealer who is engaged in some other business activity as a sole proprietor may record the assets and liabilities and transactions of such other business in the same books of accounts as he uses for his broker-dealer business or in a separate set of books. A consistent test of protection for the customer of such a sole proprietor requires that 'aggregate indebtedness' in this situation must include all the money liabilities in connection with his business as a broker-dealer and all the money liabilities in connection with any other business in which he is engaged as a

sole proprietor, less the specific exclusions provided by clauses (A) through (I) of paragraph (c)(1) of the rule. In computing 'net capital', his 'net worth' must be determined from the combined assets and liabilities of all his business as a sole proprietor; and, in addition to the adjustments to 'net worth' required of all the brokers or dealers, whether or not sole proprietors, he is required by clause (H) of paragraph (c)(2) to make further deduction from 'net worth' of any excess of his *personal* liabilities over his *personal* assets."

Securities Exchange Act Release No. 8024, Part I, E, Jan. 18, 1967, Memorandum of Securities Investor Protection Corporation in response to Court order of July 20, 1972, pp. 5 and 6. (Footnotes omitted)

 The fact that the determination of solvency is predicated on Wick's total estate reinforces the proposition that in the liquidation proceeding, the total estate of a sole proprietor should be used to meet business debts. The trustee contends that this result will produce "certain novel and perhaps serious problems" arising from inconsistencies between a standard involuntary petition in bankruptcy, and an application such as the one filed in this case. It is clear that the standard of solvency and the application related thereto required by the S.I.P.A. for broker-dealers exists independently from the general bankrupt definitions of solvency. The legislative intent was to set a stricter standard of solvency as an initial "triggering device" to call into play the regulatory authority conferred upon the SEC by Congress. Further, the device employed by Congress for initiating liquidation proceedings is not in conflict with the manner and method by which bankruptcy laws adjudicate the insolvency of a debtor where he be declared so by petition or application.

Therefore, the Court finds that the S.I.P.A. has not altered the principles of bankruptcy law on which the liquidation proceeding contemplated here is based. Secondly, and proceeding from the first conclusion, since Robert E. Wick's choice of business was a sole proprietorship, he must now accept the liability concomitant with that business form, as recognized under the bankruptcy laws. Thirdly, trustee J. Kirk Windle shall henceforth deal with both the business and personal assets available to him in accord with the applicable bankruptcy laws, so that both the personal and business liabilities of the defendant can be fairly adjudicated. The motion of the trustee dealing with the defendant's assets at Avenue State Bank, Oak Park, Illinois, is granted for liquidation of the assets held by the bank in a manner consistent with the views set out herein.

It is further ordered that this cause be referred to the Executive Committee for assignment to a Referee in Bankruptcy. The Referee shall regard Robert E. Wick as having been adjudicated insolvent and J. Kirk Windle as having been appointed trustee, and shall preside over the liquidation of his assets for the benefit of creditors and the recognition of his rights and exemptions, until the final discharge of the said Robert E. Wick, all under the applicable bankruptcy laws.