**In re Dennis L. MIRUS, Debtor.**

**Robert Dunn GLICK, as Trustee, Plaintiff,**

v.

**Dennis L. MIRUS, Defendant.**

**Bankruptcy No. 80 B 13223. Adv. Nos. 86 A 01461, 86 A 01462.**

United States Bankruptcy Court, N.D. Illinois, E.D.

June 21, 1988.

962

David N. Missner, Mark L. Prager, Bruce Dopke, David O. Lehman, Schwartz, Cooper, Kolb & Gaynor Chartered, Chicago, Ill., for plaintiff Robert Dunn Glick.

Eugene Crane, Dannen, Crane, Heyman & Simon, Chicago, Ill., for defendant Dennis L. Mirus.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on motions for summary judgment pursuant to Fed.R.Civ.P. 56 and Fed.R.Bankr.P. 7056, filed by plaintiff Robert Dunn Glick, as trustee, ("Trustee") against debtor-defendant Dennis L. Mirus ("Mirus"). For the reasons set forth herein, the Court having considered all the pleadings and exhibits filed does hereby deny the Trustee's motions for summary judgment in both adversary proceedings.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these motions pursuant to 28 U.S.C. § 1334 and General Orders of the United States District Court for the Northern District of Illinois. Both motions constitute core proceedings under 28 U.S.C. § 157(b)(2)(A), (O). In addition, the Court has jurisdiction over these proceedings pursuant to the provisions of 15 U.S.C. §§ 78eee(b)(2) and 78eee(b)(4) and the March 17, 1981 Order of United States District Court Judge Bernard Decker removing the liquidation proceeding filed by the Trustee in the United States District Court for the Northern District of Illinois, Case No. 81 C 0700 to the Bankruptcy Court for the Northern District of Illinois, Eastern Division.

## II. FACTS AND BACKGROUND

Mirus was an alleged investment advisor. In a criminal proceeding, identified as Case No. 81 CR 0674, instituted in the United States District Court for the Northern District of Illinois, Eastern Division, Mirus was indicted by a federal grand jury on sixteen counts of securities, mail and wire fraud. On January 14, 1982, Mirus entered into a plea agreement with the United States Attorney for the Northern District of Illinois and entered a voluntary plea of guilty to Counts six and fifteen of the indictment. In his plea of guilty, Mirus acknowledged *inter alia:*

[F]rom in or about 1976 to and including March, 1980, in the Northern District of Illinois, he devised a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses and representations from, among others, the people identified as the "investors" in Count One of the Indictment, which investors were induced by defendant to supply money and property when the defendant well knew that his pretenses and representations would be and were false when made.

As part of the scheme, the defendant Dennis L. Mirus represented to the investors that he was a securities broker and that he could and would invest their money in securities for their individual accounts for a fee. The defendant also represented to some of the investors that the [sic] received a Masters in Business Administration Degree from the Amos Tuck School of Business at Dartmouth College and that he was employed by the Illinois Company, an investment company, when in fact he never attended the Amos Tuck School and was never employed by the Illinois Company. Based on these representations and others, the investors entrusted the defendant with money and property for him to invest for their benefit and granted him full discretion to invest and trade the funds in their accounts, so long as the capital in their respective accounts did not drop below a certain percentage of the amount invested.

As a further part of the scheme to defraud, the defendant Dennis L. Mirus, represented to each investor that he invested their respective money and property in various securities for their accounts and that the value of these securities had appreciated in value. The defendant, in fact, deposited the investors' money in his own personal checking or trading accounts and never established separate accounts for the investors and never invested their money in securities for their alleged accounts, but instead used the money to pay his personal expenses, to invest in securities for his personal account, and to return to the investors a small percentage of their

money, which returns he represented to be earnings on their alleged investments. In furtherance of his fraudulent scheme, the defendant Dennis L. Mirus provided various investors with written account statements, written confirmation of trade memoranda, and written compilations of securities trades which the defendant represented he had effected for the investors. Virtually all of the information contained in these documents was false. By means of this scheme, the defendant Dennis L. Mirus induced the investors identified in the indictment to entrust him with $708,802. The defendant failed to perform his promises and representations regarding this money and failed to return in excess of $619,765 to the investors.

On October 10, 1980, Mirus filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.[1] On March 17, 1981 by Order of United States District Court Judge Bernard Decker, in accord with the Securities Investor Protection Act of 1970, as amended, ("SIPA") 15 U.S.C. § 78aaa *et seq.*, the Trustee was appointed in the district court case and the liquidation proceeding was removed to the bankruptcy court.

The first meeting of creditors conducted pursuant to 11 U.S.C. § 341 was commenced on November 18, 1980. On November 25, 1986, the Trustee filed a "Motion For Leave To File Complaints Objecting To Discharge Of Debtor And To Declare Certain Debts Non–Dischargeable". The Honorable Frederick J. Hertz, the bankruptcy judge originally assigned the case, continued the motion to December 10, 1986.[2] On that date, the Trustee was allowed to withdraw said motion. However, Judge Hertz then set a hearing on leave to file the complaints scheduled for January 14, 1987.

On December 19, 1986, the Trustee filed an adversary proceeding entitled "Complaint To Declare Certain Debts Non–Dischargeable" (86 A 01461). In addition, on that same date, the Trustee filed an adversary proceeding entitled "Complaint To Deny Discharge" (86 A 01462). On January 22, 1987, Judge Hertz granted the Trustee leave to file the complaints although Mirus opposed same. The January 22, 1987 Order provided in relevant part:

The Trustee, Robert Dunn Glick, is granted leave to maintain and prosecute each of the above-captioned complaints, and the Court, acting pursuant to Bankruptcy Rule 404(c) and 409(a)(2) upon its own initiative and upon the application of the Trustee, hereby extends the time for filing such Complaints to accommodate the Trustee's filing and maintenance of the ... within actions.

On June 5, 1987, Mirus filed a motion to vacate the January 22, 1987, Order and to strike and dismiss the complaints. On June 16, 1987, Judge Hertz denied that motion.

Subsequently, on July 17, 1987, the Trustee filed in adversary proceeding 86 A 01462 an "Amended Complaint To Declare Certain Debts Non–Dischargeable". Adversary proceeding 86 A 01462 now is comprised of eleven separate counts and seeks to declare certain debts non-dischargeable pursuant to Sections 523(a)(2)(A) and 523(a)(4) of the Bankruptcy Code ("Code") by virtue of the Securities Investor Protection Corporation ("SIPC") having paid monies to certain investors defrauded by Mirus.

To compound the confusion, on July 17, 1987, the Trustee filed an "Amended Complaint to Deny Discharge" in the first adversary proceeding, 86 A 01461. This two-count amended complaint objects to Mirus' discharge pursuant to Sections 727(a)(3) and 727(a)(5) of the Code. Such adversary

---

**1.** The Court has reviewed the voluminous but disorganized files and docket sheets in this case. The facts set forth herein are this Court's findings based on what may be charitably described as a less than clear record.

**2.** The Honorable Frederick J. Hertz was originally assigned the case when it was filed in 1980. The Honorable Erwin I. Katz was assigned the case on November 2, 1987, upon Judge Hertz leaving the bench. Thereafter, the case was reassigned to this Judge on February 9, 1988.

proceeding is now in part based on the Trustee's subrogation claim to the rights of the defrauded investors whose loses were paid by the SIPC.

The Trustee has moved for summary judgment in each case invoking the doctrine of collateral estoppel based on Mirus' guilty plea. Mirus has opposed entry of summary judgment, denying the applicability of the collateral estoppel doctrine, asserting that material issues of fact preclude proper entry of summary judgment and raising the relevant statute of limitation defenses to each case under the Federal Rules of Bankruptcy Procedure.

### III. ARGUMENTS SET FORTH BY THE PARTIES

1. The Trustee claims that under the theory of collateral estoppel he is entitled to summary judgment based on Mirus' guilty plea to Counts six and fifteen of the indictment.

2. Mirus, on the other hand, alleges that the adversary proceedings are time barred pursuant to Rules 4004(a), (b) and 4007(c).

3. The Trustee responds that the limitations argument is foreclosed because Judge Hertz twice denied the motion and rejected the argument on January 27, 1987, and on June 11, 1987. Moreover, the Trustee argues that the doctrines of collateral estoppel, res judicata and equitable estoppel bar relitigation of the limitations issue.

4. Further, Mirus claims that the Trustee would not be entitled to summary judgment because the exact amounts paid by the SIPC to the defrauded investors have not been shown. Moreover, Mirus alleges that the missing business records were maintained by his brokerage clearing house which the Trustee failed to obtain and secure. Thus, Mirus asserts that factual disputes exist as to the amounts paid defrauded investors and whether Mirus' failure to maintain and preserve the requisite financial records bars his discharge.

On the issue of time barring the complaints, the Court finds that Mirus has raised the limitations argument at every stage in these related adversary proceedings and thus has preserved that issue for purposes of the instant summary judgment motions. Because this issue is dispositive, the Court will discuss it first.

### IV. APPLICABILITY OF FORMER OR PRESENT FEDERAL RULES OF BANKRUPTCY PROCEDURE ("RULES")

Resolution of the limitations issue before the Court depends upon whether the former Rules (in effect when the Mirus petition was filed in 1980) or the current Rules prescribed by the 1983 Order of the United States Supreme Court will apply to the adversary proceedings at bar.

Under former Rule 409(a)(2), the bankruptcy court was afforded fairly wide latitude in setting deadlines for filing complaints objecting to the dischargeability of certain debts. Pursuant to former Rule 409(a)(2), the bankruptcy court could extend the time for the filing of a late dischargeability complaint, *ex parte* or *sua sponte*, as long as it was proven that failure to file before the bar date was due to excusable neglect or for other good cause shown. The current Rules 4007(c) and 9006(b), on the other hand, no longer permit an extension of the time to file a Section 523(c) dischargeability complaint after the expiration date.

Rule 4007 sets the deadline for filing complaints under Section 523(c) both for Chapter 7 liquidation proceedings and Chapter 11 reorganization cases of the Code:

*Determination of Dischargeability of a Debt*

. . . . .

(c) A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a).... On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

Fed.R.Bankr.P. 4007(c). By its provisions, Section 523(c) applies to dischargeability complaints filed under Sections 523(a)(2) and 523(a)(4).

In addition, Rule 9006(b)(3) provides as follows: The Court may enlarge the time for taking action under Rules ... 4007(c) ... only to the extent and under the conditions stated in those rules. Fed.R.Bankr.P. 9006(b)(3).

For objections to discharge former Rule 404(d) provided that on the expiration of the time fixed for filing a complaint objecting to discharge the court shall forthwith grant a discharge unless the complaint objecting to the discharge has been filed.

Rule 4004 presently governs complaints objecting to discharge and, in turn, provides in relevant part:

*Grant or Denial of Discharge*

(a) In a chapter 11 reorganization case, such complaint shall be filed not later than the first date set for the hearing on confirmation....

(b) [T]he court may extend for cause the time for filing a complaint objecting to discharge. The motion shall be made before such time has expired.

Fed.R.Bank.P. 4004(a), (b).

On April 25, 1983, the United States Supreme Court entered an order prescribing the current rules of procedure in bankruptcy cases:

1. That the rules of procedure in bankruptcy cases, recommended by the Judicial Conference of the United States, and to be known as the Bankruptcy Rules, be, and they hereby are, prescribed pursuant to Section 2075, Title 28, United States Code, to govern the practice and procedure in cases under Title 11, United States Code, as hereinafter set forth:

2. That the aforementioned Bankruptcy Rules shall take effect on August 1, 1983, and shall be applicable to proceedings then pending, except to the extent that in the opinion of the court their application in a pending proceeding would not be feasible or would

work injustice, in which event the former procedure applies.

3. That the Bankruptcy Rules, heretofore prescribed by this Court, be, and they hereby are, superseded by the new rules, effective August 1, 1983....

■ Pursuant to the above referenced Supreme Court Order, the current Rules took effect on August 1, 1983, were applicable to cases then pending, and superceded the former Rules. The former Rules could apply only if the application of the current Rules would not be feasible or would work injustice. No such findings were expressly made by Judge Hertz in his January 22, 1987 Order referenced above. The Court therefore finds and concludes that Rules 4004 and 4007 should govern these adversary proceedings in accordance with the Supreme Court Order.

The Trustee has failed to allege any infeasibility or injustice that would occur as a result of applying the current Rules. Moreover, the Trustee had ample time to file both complaints. Even though the Trustee was appointed on March 17, 1981, approximately four months subsequent to the first meeting of creditors, the Trustee did not file either complaint until 1986, almost six years after his appointment. The Trustee did not move to extend or take any action to enlarge the time period to file either complaint during the intervening years he was acting as Trustee. During this period Mirus was incarcerated in the Metropolitan Correctional Center in Chicago, Illinois, and was readily available for service of process.

## V. ADVERSARY PROCEEDING 86 A 01462

### A. RULE 4007(c)

■ In this proceeding, the Trustee seeks a finding that the SIPC is subrogated to the rights of the investor claimants in the aggregate amount of $314,152.24. Further, the Trustee requests that this amount be held nondischargeable under Sections 523(a)(2)(A) and 523(a)(4) of the Code.[3] The

---

3. In the final prayer for relief however, the

Trustee asks that the $314,152.24 sum be found

Court finds that adversary proceeding 86 A 01462 was not timely filed within the allotted period provided by Rule 4007.

It is clear that no extension of the limits prescribed in Rule 4007 was obtained. The case law on the issue of extending the time to file a dischargeability complaint is clear. In the case of *In re Kirsch,* 65 B.R. 297 (N.D.Ill.1986), the court noted:

> The deadline set by Rule 4007(c) is set in stone by Rule 9006(b)(3). The latter rule makes it clear that the Rule 4007(c) time can only be extended by motion filed before the Rule 4007(c) time expires. Once the time expires, it cannot be extended on grounds of excusable neglect or otherwise. (citations omitted).

65 B.R. 297, 300; *accord Vaccariello v. Lagrotteria,* 43 B.R. 1007, 1013 (N.D.Ill. 1984).

Moreover, in *In re Shelton,* 58 B.R. 746, 749 (N.D.Ill.1986), the court noted:

> There is no recourse for a party who fails to file a timely complaint objecting to the dischargeability of a debt under Section 523(a)(2), (4), or (6) or to move in a timely fashion for an extension of the period within which to file a complaint.

58 B.R. 746, 749; *see also In re Alton,* 837 F.2d 457 (11th Cir.1988).

The intent behind Rule 4007(c) was to prevent the uncertainties produced by the excusable neglect exception found in former Rule 409(a)(2). *See In re Figueroa,* 33 B.R. 298, 300 (S.D.N.Y.1983).

In this case, the Trustee had actual notice of Mirus' bankruptcy many years prior to the filing of the adversary proceedings in 1986. He had ample opportunity after his appointment to seek an extension of the filing period which expired in early 1981. Instead of seeking relief early after his appointment, his delay effectively conflicts with the "fresh start" philosophy underlying the policy of the Code favoring discharge. This adversary proceeding is time

barred under Rule 4007(c). Therefore, the Trustee is not entitled to summary judgment as a matter of law.

## VI. ADVERSARY PROCEEDING 86 A 01461

### A. RULE 4004

■ In this adversary proceeding, the Trustee seeks a finding that the SIPC possesses a claim against Mirus in the amount of $314,152.24, which is nondischargeable under Sections 727(a)(3) and 727(a)(5) of the Code. Section 727 of the Code provides that the Court shall grant a debtor a discharge unless a complaint is filed objecting thereto within the time limits fixed by Rule 4004(a).

The Court finds that adversary proceeding 86 A 01461 was based on Section 727 and is not time barred under Rule 4004. No date has been set for confirmation in the bankruptcy case which was filed as a Chapter 11 reorganization. Further, the Court has reviewed the file in this case and notes that no plan of reorganization has been filed by Mirus or anyone else. As far as can be discerned from the record, it appears that Mirus' Chapter 11 case was neither dismissed nor converted to a Chapter 7 prior to this date. The Court notes that on February 5, 1981, a motion to convert the case to a Chapter 7 was filed and continued from time to time but does not appear to have been decided. Hence, this adversary proceeding is not time barred under Rule 4004 because the bankruptcy case is still an unconverted Chapter 11 case under the Code.

### B. SECURITIES INVESTOR PROTECTION ACT OF 1970 ("SIPA")

■ The Trustee in this case was appointed under the provisions of the Securities Investor Protection Act of 1970 ("SIPA"), as amended, 15 U.S.C. § 78aaa, *et seq.* As such, the Trustee acts under

---

nondischargeable under Sections 727(a)(3) and 727(a)(5) of the Code. However, in the prayer of each individual count, the Trustee seeks relief under Sections 523(a)(2)(A) and 523(a)(4). The Court notes that this was probably a mistake in the pleadings because adversary proceeding 86 A 01461 now requests that this sum be found

nondischargeable under Sections 727(a)(3) and 727(a)(5). Thus, the Court will proceed on the basis that the Trustee seeks relief under Sections 523(a)(2)(A) and 523(a)(4) as requested in each individual count of the amended complaint in 86 A 01462.

both the authority of that statute and the Code under the jurisdiction of this Court to which the above-referenced liquidation proceeding was removed by the district court, as discussed above, pursuant to 15 U.S.C. § 78eee(b)(4).

Pursuant to the SIPA, "[t]o the extent moneys of SIPC are used to satisfy the claims of customers, ... SIPC shall be subrogated to the claims of such customers against the member." 15 U.S.C. § 78fff–4(c). *See also* 15 U.S.C. § 78fff–3(a). Therefore, the Trustee appointed under the SIPA is subrogated to the claims of Mirus' defrauded investors.

15 U.S.C. §§ 78fff–1(a) and 78fff–1(b) enumerate the powers given to a trustee and provide in relevant part as follows:

(a) *Trustee powers*

A trustee shall be vested with the same powers and title with respect to the debtor and the property of the debtor, including the same rights to avoid preferences, as a trustee in a case under Title 11....

.   .   .   .   .

(b) *Trustee duties*

To the extent consistent with the provisions of this chapter or as otherwise ordered by the court, a trustee shall be subject to the same duties as a trustee in a case under chapter 7 of Title 11 ...

15 U.S.C. §§ 78fff–1(a) and 78fff–1(b).

None of the provisions of a liquidation proceeding provided under Section 78fff–2 fix any time limits for a SIPA-appointed trustee to file either objections to discharge or dischargeability complaints.

■ Notwithstanding the provisions of 15 U.S.C. § 78fff–1(b) by which the plaintiff Trustee functions as if the proceeding were being conducted as a Chapter 7 bankruptcy case, Mirus' voluntary Chapter 11 bankruptcy petition initiated the bankruptcy case to which this adversary proceeding is related. Absent an order of conversion, the bankruptcy case is still a Chapter 11 proceeding for purposes of the Code. The Code, 11 U.S.C. § 101, *et seq.*, was subsequently passed after the SIPA and effectively dated, for most purposes, October 1, 1979. The current Rules were promul-

gated by the United States Supreme Court and became effective August 1, 1983. To the extent of any conflict in the statutes, a specific statute controls over a general statute. *Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980); *United States v. Olinger*, 759 F.2d 1293, 1299 (7th Cir.1985), *cert. denied*, 474 U.S. 839, 106 S.Ct. 120, 88 L.Ed.2d 98 (1985).

In the final analysis, the controlling authority on the statute of limitations question with respect to the objections to discharge is Rule 4004, which, as earlier discussed, this Court finds to be applicable. Adversary proceeding 86 A 01461 is not time barred absent an Order of this Court converting Mirus' bankruptcy case from Chapter 11 to Chapter 7.

■ The question of the interplay of the SIPA, the Code and the Rules has not been fully discussed in the reported decisions. The SIPA is silent on any time limit within which a trustee appointed by the district court under that statute in a case subsequently removed to the bankruptcy court must initiate an adversary proceeding by way of objections to discharge. Therefore, the Court holds that if a trustee appointed under the authority of that statute files a cause of action grounded in substantive provisions of the Code he is held, as any other litigant, to the rules of bankruptcy procedure which are applicable to all parties.

This result appears consistent with various decisions of other courts which provide some dicta on the question in this case. *Securities and Exchange Commission v. Wick*, 360 F.Supp. 312 (N.D.Ill.1973), among other things, held that the SIPA did not supersede provisions of the former Bankruptcy Act covering the manner and method by which an insolvent broker-dealer is liquidated. There, Judge McGarr further held that the trustee in that case was required to deal with the business and personal assets available to him in accord with applicable bankruptcy laws so that both the personal and business liabilities of the bankrupt broker-dealer could be fairly adjudicated. Judge McGarr noted from the

legislative history of the SIPA that its effect upon the Bankruptcy Act was strictly limited and that only those sections of the Act which would frustrate the ability of the SIPA to protect customers' funds were superseded by sections of the SIPA more consistent with its legislative purpose. 360 F.Supp. at 315.

In addition, *In re First State Securities Corp.*, 34 B.R. 492, 494 (Bankr.S.D.Fla. 1983), noted there is nothing in the SIPA inconsistent with bankruptcy claims procedure. Judge Britton found that the SIPA is remedial legislation. As such, it should be construed liberally to effect its purpose, which is the protection of the insolvent brokers-customers. 34 B.R. at 496.

██ Similarly, in the instant case, there is nothing in the SIPA inconsistent with the current Rules and in particular the limitations period on objections to discharge. It logically follows that if a SIPA-appointed trustee must be held to follow bankruptcy claims procedure, he may have the benefit and burden of the current Rules setting forth limitation periods for both objections to discharge as well as dischargeability complaints. Therefore, the Court holds Rule 4004 does not time bar the Trustee's objections to discharge.

## C. STANDARD FOR SUMMARY JUDGMENT

The Trustee claims that he is entitled to summary judgment under the theory of collateral estoppel because Mirus has pleaded guilty to Counts six and fifteen of the indictment.

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") made applicable to adversary proceedings in the Bankruptcy Court by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hossman v. Spradlin*, 812 F.2d 1019, 1020 (7th Cir.1987).

The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when no genuine issue of material fact is in dispute. *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585–586, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538 (1986). Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Marine Bank, Nat. Ass'n v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir.1987); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987).

## D. APPLICABILITY OF SUMMARY JUDGMENT

The Trustee objects to Mirus' discharge under Sections 727(a)(3) and 727(a)(5). Sections 727(a)(3) and 727(a)(5) prevent the Court from granting the debtor a discharge if:

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers from which the debtors' financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

.    .    .    .    .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

11 U.S.C. §§ 727(a)(3) and 727(a)(5).

The Trustee takes the position that Mirus is estopped from denying that he falsified records and has failed to explain the loss of assets based on his guilty plea to Counts six and fifteen of the indictment.

■ Mirus argues that the entry of summary judgment should be precluded because a factual dispute exists as to the amount of money paid out by the SIPC and that missing records were in the custody of his former brokerage clearing house. The missing records are asserted as a part of his defense to both statutory objections to discharge. The Court finds that no genuine issue as to the amount paid exists. In an unrebutted affidavit, the Trustee has set forth the amounts paid by the SIPC to the defrauded investors. The aggregate sum totals $314,152.24. Mirus has not filed a counter-affidavit to rebut the averments of fact contained in the Trustee's affidavit. Rather, Mirus merely alleges that the Trustee has failed to recite the precise amount paid.

Rule 56(e) addresses this problem and provides, in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial....

Fed.R.Civ.P. 56(e).

■ Mirus has not set forth specific facts showing that a genuine issue exists in terms of the amount paid. Mirus, however, argues that a factual dispute exists as to the availability of Mirus' missing books and records which he claims the Trustee could have secured and obtained but apparently did not. There is no evidence or affidavit before the Court on this factual dispute. The lack of specific facts supporting or rebutting this point creates a material issue of fact, and thus prevents the entry of summary judgment. At trial, Mirus may offer evidence to support a defense justifying the missing business records and attempt to satisfactorily explain why his assets were insufficient to meet his liabilities. He should be afforded his day in court to present whatever evidence he may have.

### E. COLLATERAL ESTOPPEL

■ The doctrine of collateral estoppel, also known as issue preclusion, will prevent relitigating an issue that has already been litigated. *Ferrell v. Pierce,* 785 F.2d 1372, 1384 (7th Cir.1986). In order for collateral estoppel to apply, the following elements must be established: (1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) there is an identity of issues. *Appley v. West,* 832 F.2d 1021, 1025 (7th Cir.1987); *Teamsters Local 282 Pension Trust Fund v. Angelos,* 815 F.2d 452, 456 n. 3 (7th Cir. 1987); *Gilldorn Sav. Ass'n. v. Commerce Sav. Ass'n,* 804 F.2d 390, 392 (7th Cir.1986); *Klingman v. Levinson,* 66 B.R. 548 (N.D. Ill.1986), *aff'd,* 831 F.2d 1292 (7th Cir.1987). The policy underlying the doctrine is that it promotes judicial efficiency and prevents inconsistent decisions while affording each party one opportunity to litigate an issue. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Donald v. Polk County,* 836 F.2d 376, 381 (7th Cir.1988).

A guilty plea may constitute collateral estoppel in a subsequent civil trial. 832 F.2d at 1026. Moreover, "[i]n this Circuit, a criminal conviction based upon a guilty plea conclusively establishes, for purposes of a subsequent civil proceeding, that the defendant engaged in the criminal act for which he was convicted." 832 F.2d at 1026 (quoting *Nathan v. Tenna Corp.,* 560 F.2d 761, 763 (7th Cir.1977)). In *Appley v. West,* the defendant pleaded guilty to two counts of mail fraud. The plaintiff moved

for summary judgment in a suit that had been filed prior to the plea of guilty. The Seventh Circuit upheld the district court's grant of summary judgment. The Court found that when the defendant pleaded guilty to the mail fraud counts, he pleaded guilty to all material facts alleged in the indictment. Likewise, when Mirus pleaded guilty to Counts six and fifteen he, in effect, pleaded guilty to all of the facts alleged in the indictment on those particular counts. *See Appley v. West* at 1026; *Tom v. Twomey*, 430 F.Supp. 160, 162 (N.D.Ill. 1977).

The Court finds that not all of the elements of collateral estoppel have been established in this case. The material allegations of the indictment and plea agreement do not satisfy all the requirements under Sections 727(a)(3) and 727(a)(5). Mirus' guilty plea to two counts of the indictment does not conclusively establish his failure to explain satisfactorily a loss or deficiency of assets to meet his liabilities for Section 727(a)(5) purposes. In addition, the plea itself in light of the allegations regarding the missing records does not conclusively establish that his actions constitute unjustifiable failure to keep or preserve records under Section 727(a)(3). Accordingly, although the guilty plea is strong evidence of wrongdoing by Mirus and an admission by him, not all of the issues effectively resolved by the guilty plea in the criminal case are resolved thereby in the Trustee's objections to discharge in this civil adversary proceeding in which additional and different issues of fact and law remain to be resolved.

## VII. CONCLUSION

For the foregoing reasons, the Court hereby denies the Trustee's motions for summary judgment in both adversary proceedings 86 A 01461 and 86 A 01462.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

By separate Preliminary Pretrial Order to be entered concurrently with this Memorandum Opinion, this Court sets adversary

proceeding 86 A 01461 for pretrial conference on Tuesday, July 26, 1988 at 9:00 a.m. The attorneys of record for the parties are ordered to fully comply therewith.