In re Lawrence M. COOPER, Debtor.

AMERICAN NATIONAL BANK and
Trust Company of Chicago,
Plaintiff,

v.

Lawrence M. COOPER, Defendant.

Bankruptcy No. 87 B 12521.
Adv. No. 87 A 1238.

United States Bankruptcy Court,
N.D. Illinois, E.D.

March 21, 1991.

James R. Latta, Fagel, Haber & Maragos, Chicago, Ill., for plaintiff.

Lawrence M. Cooper, pro se.

## MEMORANDUM, OPINION, AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

### FACTS

This matter comes before the court on American National Bank's motion for summary judgment on its adversary action to determine the dischargeability of Cooper's debt to the Bank under §§ 523(a)(4) and (a)(6) of the Bankruptcy Code, 11 U.S.C. §§ 523(a)(4), (6). Lawrence Cooper was an attorney and a member of the panel of bankruptcy trustees for the Northern District of Illinois. For a number of years in the mid-1980's he systematically looted bankruptcy estates, converted client funds, and defrauded the Bank in a check kiting scheme. In 1987 Cooper's house of cards came tumbling down. His fraud and defalcations came to light. His law firm, Cooper & Cooper, filed Chapter 11.

An involuntary Chapter 7 petition was filed against Cooper individually on August 26, 1987. Cooper converted the Chapter 7 to a case under Chapter 11 on September 16, 1987. The case was reconverted to Chapter 7 on December 18, 1987. On October 13, 1987, Cooper entered into a plea agreement with the U.S. Attorney for the Northern District of Illinois in which, *inter alia,* he admitted to participating in a check kiting scheme that defrauded the Bank of approximately $613,000. For his crimes against the Bank, bankruptcy estates, and his firm's clients, Cooper was sentenced to 8 years in prison.

The Bank filed an adversary complaint to determine the dischargeability of the debt it claims Cooper owes to it, asserting that the debt arose through larceny and is thus nondischargeable under § 523(a)(4) of the Bankruptcy Code, and the debt was the result of willful and malicious injury to the property of the Bank and thus is nondischargeable under § 523(a)(6) of the Code. The Bank then moved for summary judgment on the grounds that Cooper is collat-

erally estopped by his guilty plea to the crime of bank fraud from relitigating the question of how the debt arose and from contesting that he defrauded the Bank out of $613,000.

## JURISDICTION

This matter arises under §§ 523(a)(4) and (a)(6) of the Bankruptcy Code. Accordingly, this court has jurisdiction over the dispute under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and is before the court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois automatically referring bankruptcy cases and proceedings to the court for hearing and determination.

## STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(c) Fed.R.Civ.P., Bankr.Rule 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The inquiry that the court must make is whether the evidence presents a sufficient disagreement to require trial or whether one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2511–12. All reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *In re Mirus*, 87 B.R. 960 (Bankr. N.D.Ill.1988).

## DISCUSSION

### I. Collateral Estoppel

The Seventh Circuit in *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987),

made it clear that collateral estoppel may preclude relitigation by one side or the other in a dischargeability action "where the [nonbankruptcy] litigation actually and necessarily decided the relevant issue." The court identified four requirements which must be met to preclude relitigation of an issue:

1. The issue sought to be precluded must be the same as that involved in the prior action;

2. The issue must have been actually litigated;

3. The determination of the issue must have been essential to the final judgment; and

4. The party against whom estoppel is invoked must have been fully represented in the prior action.

*Id.*

The Bank argues that it is entitled to judgment as a matter of law because Cooper's guilty plea establishes all the facts to satisfy the elements required for a finding of nondischargeability under §§ 523(a)(4) and (a)(6) of the Bankruptcy Code. The Bank further argues that the same guilty plea estops Cooper from contesting that the amount he owes the Bank from the check kiting scheme is at least $613,000, and that the Bank is entitled to a judgment against Cooper in that amount.

### II. Dischargeability

In analyzing the Bank's instant motion for summary judgment, it is important to draw a sharp distinction between liability and damages. The Bank seeks summary judgment on both the question of whether its claims against Cooper are nondischargeable and the amount of money Cooper owes the Bank from the check kiting scheme. Without quite saying so, Cooper, in effect, admits that he pled guilty to acts which amount to larceny and willful and malicious injury to the Bank, and thus any money he owes the Bank is not dischargeable in his bankruptcy. However, he argues that the Bank cannot use collateral estoppel against him with respect to the amount of the debt because the issue of harm to the Bank was

not "necessary to the determination" of his guilt.

■ It is clear that Cooper is collaterally estopped by his guilty plea from relitigating the issue of liability to the Bank. Cooper pled guilty to creating a check kiting scheme in which he deposited and withdrew funds from his checking accounts knowing that he had insufficient funds to cover both the initial deposits and the subsequent withdrawals. These acts, which amount to larceny and willful and malicious injury, are identical to the issues disposed of in the criminal case by Cooper's guilty plea. Moreover, the district court had to find that Cooper had admitted he did these acts to find him guilty of bank fraud. A guilty plea satisfies the "actually litigated" requirement for collateral estoppel. *See Appley v. West*, 832 F.2d 1021; 1026 (7th Cir.1987); *In re Nunez*, 95 B.R. 566 (Bankr.N.D.Ill.1988); *In re Mirus*, 87 B.R. 960, 970–971 (Bankr.N.D.Ill.1988); *In re Hopkins*, 82 B.R. 952, 954–955 (Bankr.N.D. Ill.1988); *In re Goux*, 72 B.R. 355, 360 (Bankr.N.D.N.Y.1987). Finally, Cooper was fully represented by an attorney in the criminal case and participated in all aspects of that case. Thus, all of the elements necessary to collaterally estop Cooper from relitigating the question of whether he did the acts that are described in the plea agreement for bank fraud are satisfied.

Even if collateral estoppel could not be used, the record in this case overwhelmingly entitles the Bank to summary judgment on the issue of dischargeability. There is no issue of fact with respect to whether Cooper committed the acts by which the Bank was defrauded. In fact, Cooper does not dispute that he committed them. The standard of proof in nondischargeability proceedings recently determined by the Supreme Court is "preponderance of the evidence." *Grogan v. Garner*, — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Applying that standard to the undisputed facts in the pleadings, the Court concludes that Cooper's debt to the Bank is nondischargeable under both §§ 523(a)(4) and (6).

1. *Dischargeability pursuant to § 523(a)(4)*

■ There can be no doubt that Cooper's activities with respect to the Bank amount to larceny for purposes of § 523(a)(4). In cases of embezzlement or larceny, there is no requirement that the debtor acted in a fiduciary capacity. 3 *Collier on Bankruptcy* ¶ 523.14[3] (15th ed. 1990). Thus, the fact that Cooper owed no fiduciary duty to the Bank is not fatal to the Banks' claims under § 523(a)(4). Larceny as used in § 523(a)(4) means common law larceny: "the fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to the taker's use without the consent of the owner." *In re Shinew*, 33 B.R. 588, 592 (Bankr.N.D.Ohio 1983).

Cooper's plea agreement states in relevant part:

> Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One, Two, and Three of the information. In pleading guilty to these counts defendant acknowledges that: ... (b) As charged in Count Two of the information, defendant Lawrence M. Cooper *created a check kiting scheme which ... defrauded the American National Bank and Trust Company of Chicago ...* out of approximately $613,000. Defendant accomplished this scheme by depositing checks into his account at American National Bank when he knew that he did not have sufficient funds to cover these deposits. Defendant then wrote checks out of his account at American National Bank, knowing that these were not sufficient funds actually on deposit to cover these withdrawal checks.

Plea Agreement, *U.S. v. Cooper*, 87 C.R. 424 (N.D.Ill.1987) at 1–2 (emphasis added). By pleading guilty, Cooper acknowledged that he obtained control over property of the Bank fraudulently and wrongfully and converted such property to his own use. Thus, Cooper committed larceny and his debt is nondischargeable pursuant to § 523(a)(4).

### 2. *Dischargeability pursuant to § 523(a)(6)*

■ To be nondischargeable under § 523(a)(6), the debtor must willfully and maliciously cause injury to another entity or the property of another entity. In bankruptcy "willful" means an intentional, deliberate act. "Malicious" means that the act was done with the knowledge that the act would almost certainly cause harm to another, and no element of actual ill will is necessary. 3 *Collier* ¶ 523.16[1]. By Cooper's plea it is obvious that he undertook a check kiting scheme and stole the money intentionally and deliberately. As an attorney and Bankruptcy Panel Trustee, he certainly knew that harm to the Bank would be caused by his actions. Thus, his actions were "willful and malicious" and his debt is nondischargeable pursuant to § 523(a)(6).

### III. Damages

■ The Court agrees with Cooper that he is not collaterally estopped by the plea agreement from litigating the question of the Bank's damage in this adversary proceeding. The statute under which Cooper pled guilty on account of the check kiting scheme provides: "Whoever knowingly executes or attempts to execute, a scheme or artifice (1) to defraud a federally chartered bank or insured financial institution ..." is guilty of a federal crime. 18 U.S.C. § 1344. This language makes clear that the amount of the Bank's damages was not essential to finding Cooper guilty of bank fraud, since he could have been convicted for attempting to defraud the Bank even if the Bank had not lost a nickel as a result of Cooper's machinations. Thus, actual injury to the Bank was not a requirement for establishing Cooper's guilt, and the Bank cannot use the plea agreement to collaterally estop Cooper from litigating the question of the Bank's damages in this forum since one of the elements of collateral estoppel, i.e., that the issue of the amount of the injury to the Bank from the check kiting scheme be essential to the finding that Cooper was guilty of bank fraud, is missing. *See Klingman,* 831 F.2d at 1295; *Appley,* 832 F.2d at 1026.

■ Once collateral estoppel is eliminated, there is precious little in the record before the court on the motion for summary judgment as to the amount of the Bank's damages. What there is in the record makes it clear that genuine issues of material fact exist as to the amount of Cooper's debt to the Bank. In its original complaint, the Bank claims that it lost a total of $759,132.62 as a result of Cooper's scheme. In its summary judgment motion, it states that it would be satisfied with the amount it perceives as being admitted in Cooper's plea agreement, $613,000.

■ Cooper contests both amounts on the grounds that the Bank's documents are not clear on the question and that testimony from Bank employees is required to determine what, if anything, the Bank lost. He has produced evidence of confusion in the Bank's records. Cooper is apparently no longer as contrite as he was at his sentencing when all he wanted was a chance to repay all of his victims. Thus, he now raises questions about what he said in his plea agreement with respect to the Bank's damages. He now takes the position that the Bank's damages are no where near $613,000, but are, in fact, much less. That is his right. While the plea agreement is evidence against Cooper, he is entitled to try to explain his admissions in the plea agreement in this proceeding. *See* E. Cleary, McCormick on Evidence § 265 n. 24 (3d ed. 1984).

■ Finally, the language of the plea agreement itself is too vague to support a motion for summary judgment. The plea agreement says that Cooper defrauded the Bank out of "approximately $613,000." This Court cannot enter a judgment for "approximately $613,000." It is up to the Bank to establish that no issue of material fact exists with respect to damages. On the record now before the court, this Court is unable to determine the amount of the Bank's damages. Instead, issues of material fact exist in that regard. Accordingly the Bank's motion for summary judgment must be denied on the issue of damages.

## CONCLUSION

For the reasons stated above, the Bank's motion for summary judgment on the issue of the dischargeability of Cooper's debt owed to the Bank is granted; however, the motion is denied with respect to the amount of the debt.