**In re TRI SYSTEMS CONSULTING & DESIGN, INC., Debtor.**

**NEW HAMPSHIRE INSURANCE COMPANY, Plaintiff,**

**v.**

**TRI SYSTEMS CONSULTING & DESIGN, INC.; William Bass as Trustee; Frank & Finger, P.C., formerly Nicholls, Kusic, Frank and Finger, P.C.; Robert E. Kleeman, Jr.; and Russell Kramer, Defendants.**

**Bankruptcy No. 86–B–01983–G.**

**Adv. 89–A–1089.**

United States Bankruptcy Court, D. Colorado.

May 31, 1990.

Eugene S. Hames, Wood, Ris & Hames, P.C., Denver, Colo., for New Hampshire Ins. Co.

William S. Finger, Frank & Finger, P.C., Evergreen, Colo., for Tri Systems Consulting & Design Inc., and William Bass, as trustee.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion to Permit Filing Award and Request for Entry of Judgment on the Award Together with Costs and Attorneys Fees filed by the Debtor, Tri Systems Consulting & Design, Inc. ("Tri Systems" or "Insured" herein), and the Trustee, William Bass. William S. Finger of Fresh & Finger, P.C. appeared for Tri Systems and the Trustee, and Eugene S. Hames appeared for New Hampshire Insurance Company ("NHIC" or "Insurer" herein). The Court, having heard oral argument and having considered the pleadings and documents presented at the time of hearing, now enters the following Memorandum Opinion and Order.

The central issue before the Court is, simply stated, whether the Insured/Debtor is entitled to payment of interest on its claims for property damage loss and business income loss resulting from a burglary. The Insurer's insurance policy has no provisions respecting an interest factor; state statutes have provisions respecting, generally, an interest factor. The claims, in part, remained unpaid by the Insurer for about five years.

## FINDINGS

1. On October 31, 1984, Tri Systems was insured under Policy No. BP–814–58–20 ("Policy") issued by NHIC. That Policy provided *inter alia* property damage coverage, Coverage B, and loss of income coverage due to business interruption, Coverage C.

2. On or about October 31, 1984, and as a consequence of burglary, Tri Systems sustained a loss of software at its business premises and immediately presented a Proof of Loss under the Policy.

3. The claim for property damage was investigated by NHIC and a partial payment of $15,000 was made to Tri Systems on January 2, 1985. On March 5, 1985, after the amount of property loss was agreed upon, NHIC paid Tri Systems $84,900, for a total payment of $100,000, the Policy limit, less a $100 deductible. The Court finds that the time spent by NHIC in investigating and paying the property damage claim appears, generally, reasonable under the circumstances.

4. At the time the final payment was made for property loss, Tri Systems demanded that interest be paid from the date of loss to the date that NHIC made the payments to Tri Systems. NHIC at all times pertinent denied that interest was due and owing to Tri Systems and refused to pay that part of the property loss claim. Tri Systems accepted the $100,000 payment in 1985 for its property damage claim, but expressly reserved its right to claim interest on the obligation at a later time.

5. A substantial claim of about $300,000 for loss of income under Coverage C of the Policy was also asserted by Tri Systems in April, 1985. NHIC did not refuse to pay the claim, but on January 9, 1986, about 14 months after the Insured's loss was sustained and pursuant to the Policy provisions, NHIC demanded that the amount of the disputed income loss, if any, be determined by the Policy "appraisal" process, a type of arbitration process. NHIC designated Roger Wells as its appraiser and Tri Systems named Russell Kramer ("Kramer") as its appraiser. On March 6, 1986, Tri Systems filed its Petition in bankruptcy and, thereafter, Robert Kleeman, Jr. ("Kleeman") was selected as the third appraiser, or umpire, in accordance with the Policy procedures.

6. The Policy provides that each party would pay its own appraiser and would share equally in the compensation of the umpire. Due to the fact that Tri Systems had filed for bankruptcy, the parties agreed that NHIC would advance the funds for compensating Kleeman, but that if any award was entered in favor of Tri Systems and against NHIC, the award would be reduced by one-half of the amount paid to Kleeman. That agreement was approved by this Court.

7. Shortly before the appraisal hearing, NHIC filed this adversary proceeding in Bankruptcy Court seeking, *inter alia,* an order to limit the appraisal hearing to the sole issue of the amount of business interruption loss, if any, sustained by Tri Systems.

8. On February 21, 1990, after a lengthy hearing, the appraisers awarded Tri Systems $17,500 as and for compensa- tion for loss of income under Coverage C, and found that they, the appraisers, had no jurisdiction to rule on the interest questions.

9. NHIC paid Kleeman the sum of $15,-148.50 for his services in this case. The payments included the time he spent as the umpire in the loss of income dispute, in appearing in Bankruptcy Court, and as a Defendant in the adversary proceeding.

## DISCUSSION

NHIC has stated to the Court that it will *not* contest the $17,500 arbitration appraisal award for loss of income under Coverage C. The Court accepts this statement as an admission and therefore determines that entry of the award as a judgment is appropriate. The Court further determines that since NHIC is accepting the award, the claims in the Verified Complaint filed by NHIC regarding the arbitration appraisal award are moot.

The Court determines that the only issues that properly remain before it, since it can now take jurisdiction after the arbitration appraisal process, are: (1) whether Tri Systems is entitled to interest on the award for loss of income; (2) whether Tri Systems is entitled to interest on the award for loss of business property; and (3) whether NHIC is responsible for the costs of Kleeman's and Kramer's defense of claims which were brought in the adversary proceeding.[1]

### A. PREJUDGMENT INTEREST ON THE LOSS OF BUSINESS AWARD

■ The Trustee for Tri Systems claims an entitlement to interest on the award for

---

1. The Debtor/Insured urges the Court to consider and decide two additional issues under the Policy, or otherwise: (a) whether NHIC is responsible for the Trustee's administrative expenses in defending the claims brought by NHIC, and (b) whether NHIC is responsible for the Trustee's attorney's lawyer fees, since NHIC sued the Trustee's lawyer. There may be grounds on which an award of attorney's fees against NHIC might be appropriate and legally justified. Those two claims, however, have not been properly and fully presented to the Court or argued, or briefed, by either party. The claims have merely been asserted by the Debtor in post-hearing documents filed with the Court and not addressed by NHIC. Any request for an award of expenses or attorney's fees must be properly requested. An Application for expenses or attorney's fees and a detailed, legally sufficient, and cogent, statement of legal fees and costs should be submitted to the Court, with a copy to NHIC's counsel, by Trustee's counsel within 15 days after the date of this Order if fees and costs are to be requested of this Court. Only reasonable, necessary and actual fees and costs incurred should be requested and may be considered by the Court. Counsel for NHIC will be allowed to file a Statement in Opposition to the requested fees and costs, in whole or in

loss of business income based, essentially, on (1) the provisions of C.R.S. § 5–12–101 and 102 (1989 Supp.), (2) the statutory policy of the Bankruptcy Code that routinely recognizes the time value of money, and (3) principles of equity and public policy.

This Court concludes that, under the circumstances of this case, an award of interest is correct, in legal terms, and necessary, in equitable terms. This conclusion is derived from, first, several features of this particular dispute and, second, the principles embodied in the practice and statutory mandate awarding interest on financial obligations.[2] The features of the dispute between the parties and the principles to which the Court refers, include the following.

■ First, NHIC asserts that the language of the Policy prevents such an award of interest to the Debtor/Insured. The Court has reviewed the Policy and notes that the Policy is silent as to an award of interest. An insurance policy under Colorado law shall be construed in favor of the insured and against the insurance company. *Worsham Constr. Co., Inc. v. Reliance Ins. Co.*, 687 P.2d 988, 990 (Colo.App.1984). The omission of a provision on interest in the Policy may be construed against the Insurer, NHIC, and the Court believes it is thus proper to do so.

Second, the state statute, on its face and standing alone, appears to mandate an award of interest in virtually all circumstances where a financial obligation is owing and is paid over time or where payment is wrongfully withheld. The language itself creates, generally, an interest factor to be added to enforceable financial obligations where money is wrongfully withheld and, significantly, where it is *not* wrongfully withheld, as well. Of importance, it should be noted that *this principle applies regardless of whether the* *amount of the obligation is liquidated or* *not.* C.R.S. § 5–12–102(3); C.R.S. § 5–12–101, 102, *et seq.* (1989 Supp.). (*See*, n. 5, *infra.*)

■ An analysis of a statute begins with the language of the statute itself. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 561, 99 S.Ct. 2479, 2481, 61 L.Ed.2d 82 (1979). If the language of a statute is unambiguous, it ought to be applied as written without further resort to legislative history. *Central Trust Co. v. Official Creditors' Committee*, 454 U.S. 354, 359, 102 S.Ct. 695, 697, 70 L.Ed.2d 542 (1982).

Third, the public policy of the State of Colorado relating to the award of interest before judgment, as set forth in the case of *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362 (Colo.1989), is that prejudgment interest is required to be paid under certain conditions. The instant case is one that is appropriate for application of that policy. The policy of awarding prejudgment interest promotes an early and expedited settlement of disputes and discourages delay in payment of claims. NHIC, at the time of the loss, knew, or understood, of the likely prospect that some unliquidated amount of liability existed. As was its right, NHIC elected to make no partial payment on that prospective, but unliquidated, liability for business income loss. Indeed, it never made a partial payment on the business income loss for over five years after the initial Proof of Loss was filed and after it paid, in full, on the property loss claim, March 1985.

In amending C.R.S. § 5–12–102, the Colorado legislature made a substantial change in the law allowing an award of interest on unliquidated sums. *Jasken v. Sheehy Constr. Co.*, 642 P.2d 58 (Colo.App.1982). The fact that the insurer disputed the amount of the debt is not at all dispositive, or controlling, to whether interest is due on

---

part, within 15 days after receipt of the Trustee's Application. Both the Application and the Statement in Opposition should incorporate appropriate legal authority on the issue presented. After the Court receives the Application and NHIC's Statement in Opposition, it will take the matter under advisement.

**2.** The five enumerated features of this case and principles by which this Court concludes that an award of interest is proper, apply to the award of interest on the loss of business income, Coverage C, as well as to the property loss sustained under Coverage B.

the amount ultimately awarded. *Quad Constr., Inc. v. William A. Smith Contracting Co.*, 534 F.2d 1391 (10th Cir.1976). A contrary holding would encourage insurance companies to dispute claims, rather than reach fair and timely resolutions with policyholders.

Fourth, counsel for NHIC acknowledges that the Colorado statute fixes a right to interest on an obligation. It is the *time* at which interest is to begin accruing, the point in time at which an obligee becomes entitled to interest on the principal obligation, that is in sharp dispute. For example, it is recognized by NHIC that an insurer's obligation, once it becomes admitted, fixed, liquidated and not contingent, becomes one on which interest accrues. Under the state statute an obligation cannot remain unpaid indefinitely and still not accrue interest. This concept is one with which even the Insurer's counsel agrees.

The real issue in contention on the question of interest is, therefore, not "if" interest may be awarded on the Insurer's obligation, but "when" it accrues on, or becomes part of, the obligation.

Fifth, the concept of the "time value of money" is not only an important element of most commercial transactions, it is a key ingredient in bankruptcy cases and in protecting creditors' rights and interests in bankruptcy proceedings. When a creditor is paid over time, it is generally entitled to payment of an interest factor on principal payments to give the creditor full and fair value on its claim. A creditor, generally, has a right to payment of interest, or the time value of money, when economic circumstances allow and/or before a debtor can recover his/her interests from a bankruptcy estate. *See, e.g.,* 11 U.S.C. §§ 726(a)(5), 1129(a)(9), 1129(b)(2), 1325(a)(5).

This Court believes that when and where interest, or the concept of the time value of money, is expressly provided for or implied in the law, or otherwise justified on grounds of equity, the interest factor, the concept of time value of money, ought to be incorporated into an obligation. Here, it is not only expressly provided for and implied in the applicable statute, it is fully justified on grounds of equity, as well.

Based on the five features of this dispute and the principles cited above, the Court finds that an award of interest under both C.R.S. § 5–12–102(1)(a) and (b) is appropriate. The Court shall award interest based at the statutory rate of 8% per annum compounded annually.

Tri Systems alleges that: "interest in the amount of $9,060.66 through March 20, 1990 is to be included in the judgment. Interest is also due on that amount after March 20, 1990, less appropriate payments made to Mr. Kleeman." This assumes, evidently, interest is to run from 30 days after the date of the loss, October 31, 1984.

NHIC maintains that its obligation to pay and thus its interest obligation, if any, does not run until about 60 days after February 21, 1990, the date the appraisal award was rendered. This position is advanced primarily due to Policy language apparently aimed at Coverage C "Loss of Income," which, in pertinent part, allows that payments on loss claims are due only 60 days after "ascertainment of the loss is made either by agreement ... or filing ... of an award as herein provided." [3]

This Court concludes that to rely exclusively and unqualifiedly on the Policy language to determine *when* interest accrues is not in accord with the law, not justified by the facts of this case, and not at all fair and equitable. *While, indeed, the Policy language may be proper and controlling for fixing the date on which payment, itself, is due, i.e., when loss is payable, it*

---

**3.** The subject insurance Policy issued by NHIC states, in part, as follows:

"When Loss Payable."

"The amount of loss for which this company may be liable shall be payable 60 days after proof of loss, as herein provided, is received by this company and ascertainment of the loss is made either by agreement between the insured in this company expressed in writing or by the filing with this company of an award as herein provided.

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with and unless commenced within 12 months next after inception of the loss."

*is neither determinative, nor should it be dispositive, of when interest begins to accrue on the Insurer's principal obligation, or when the Insurer's obligation to pay interest arises.*[4]

Rather, to fix the date from which interest begins accruing on the Insurer's principal obligation, the Court will adopt the statutory language which, generally, gives interest to a claimant on delayed payments and is designed to "fully recognize the gain or benefit realized by the person who fails to pay on an obligation when it becomes due or a person who wrongfully withholds payment for a period of time." C.R.S. § 5–12–102. Specifically, the Court will adopt the language of C.R.S. § 5–12–102(1), (2), and (3) to fix the date on which interest accrues on an obligation not timely paid, not paid when due, or on a payment otherwise wrongfully withheld after it became due.[5]

This Court finds and concludes that the Insurer's obligation to the Debtor on the "loss of business award," Coverage C, became due 60 days after Proof of Loss on the loss of income was filed by the Insured and was received by the Insurer, about April 15, 1985, which date is, thus, fixed at June 15, 1985. This 60–day period invokes the language and intent of the Insurer's Policy (n. 3), and also fixes a reasonable payment date sufficient to allow adequate investigation by the Insurer. Significantly, it also fits within the language and spirit of the state statute imposing an interest obligation on debts after they become due. Finally, and importantly, the date here fixed as the due date occurs long after (1) Debtor filed its initial Proof of Loss, and (2) the date on which the Insurer paid its first installment to the Debtor on the property loss claim, January 2, 1985, thus demonstrating that the Insurer had indeed received, acknowledged, and admitted adequate Proof of Loss from the Insured.

Interest on the claim shall run from 60 days after adequate Proof of Loss was received by NHIC, or June 15, 1985. The Court's calculations result in an award of interest in the amount of $8,048.70.[6]

**4.** If the Policy language were to control the issue of *when* interest begins accruing, then, at least theoretically and not unlike this case, a five-year delay—or longer—could routinely be garnered by the Insurer and no interest factor, or time value of money, need be accounted for or paid to an insured who otherwise has a legitimate and provable, albeit unliquidated, claim. The date on which payment is due and the date on which interest starts to accrue are two entirely different things.

**5.** Colorado Revised Statute § 5–12–102 (1989 Supp.) states, in pertinent part, as follows:
"(1) Except as provided in section 13–21–101, C.R.S., when there is no agreement as to the rate thereof, creditors shall receive interest as follows:
(a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,

(b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.
(2) When there is no agreement as to the rate thereof, creditors shall be allowed to receive interest at the rate of eight percent per annum compounded annually for all moneys after they become due on any bill, bond, promissory note, or other instrument of writing, or money due on mutual settlement of accounts from the date of such settlement and on money due on account from the date when the same became due.
(3) Interest shall be allowed as provided in subsection (1) of this section even if the amount is unliquidated at the time of wrongful withholding or at the time when due."

**6.** The Court's calculations on which this figure is based are as follows (also found, in part, on Exhibit C to Debtor's Application for Entry of Judgment):

Date of Loss: October 31, 1984

Filing of Proof of Business Income Loss: April 15, 1985

Date on Which Interest Commences to Accrue: June 15, 1985

June 15, 1985 – June 14, 1986      $1,400.00

(Year 1)    ($17,500 × 8%)

## B. INTEREST ON THE BUSINESS PROPERTY LOSS CLAIM

Tri Systems additionally argues that NHIC is indebted to it for interest under the property loss claim paid in calendar year 1985. For the same reason argued above, NHIC asserts that it has no liability for interest on the property loss. It is mutually agreed by the parties that Tri Systems specifically reserved out the interest question when it accepted payment from NHIC in March 1985. NHIC also argues that Tri Systems is barred from bringing this claim by operation of the statute of limitations. The Court determines that the appropriate statute of limitations is a six-year statute, formerly codified at C.R.S. § 13–80–110. The Court further determines that, as a matter of law, Tri Systems presented the interest question in the arbitration appraisal procedure and this stayed the operation of the one-year policy provision, until the arbitrators rendered their decision.

For each and all the five reasons previously stated which justify and explain the award of interest on the loss of business income claim, including, of course, the state statute and state public policy, and the concept of time value of money, the Court shall award interest on the $100,000 personal property loss in the amount of $1,157.01[7] through March 4, 1985. Addi-

tional interest at 8%, compounded annually, is due thereafter until paid.

## C. KLEEMAN AND KRAMER FEES

The parties in this action agreed that in regard to all costs for Kleeman's services as an umpire, those fees would be divided equally, and any share of Kleeman's fees advanced by NHIC would be deducted from the award. NHIC is entitled to deduct from the award granted here that portion of Kleeman's fees it advanced for the Debtor.

It is not clear to the Court from the briefs, file or argument, but evidently the Debtor alleges that NHIC is improperly trying to deduct from the award certain amounts paid for Kleeman's legal services when he was sued by NHIC and for Kleeman's time expended as a result of the litigation brought by NHIC. That would be improper and unacceptable. NHIC has acknowledged that it is willing to pay Kleeman's legal fees.

The Court determines that Tri Systems is not responsible for paying any share of Kleeman's legal fees or for the time expended by Kleeman in any function other than as an arbitrator/umpire. NHIC elected to commence a challenge to the validity of the arbitration appraisal proceeding and NHIC must be solely responsible for the direct and necessary associated costs and

| | |
|---|---|
| June 15, 1986 – June 14, 1987 | $1,512.00 |
| (Year 2)  ($18,000 × 8%) | |
| June 15, 1987 – June 14, 1988 | $1,632.96 |
| (Year 3)  ($20,412 × 8%) | |
| June 15, 1988 – June 14, 1989 | $1,763.60 |
| (Year 4)  ($22,044.96 × 8%) | |
| June 15, 1989 – May 14, 1990 | $1,740.14 |
| (Year 5)  ($5.21 per diem × 334 days = $1,740.14) | |
| | $8,048.70 |

7. Interest, again, begins accruing 60 days after Proof of Loss was filed, October 31, 1984. The Court's calculations on which this figure is based are as follows:

1 day interest × $21.91 per diem ($100,000) = $ 21.91
(January 1, 1985)

61 days interest × $18.60 per diem ($84,900) = $1,135.10
(January 2, 1985–March 4, 1985)

Total Interest on Property Loss Claim = $1,157.01

legal fees of Kleeman resulting from that choice.

The Trustee has agreed to split the sum of $12,450 as the cost of Kleeman, serving as the umpire, and the Court finds that figure to be appropriate. The award plus interest on both of the claims shall, therefore, be reduced by $6,225.

Tri Systems also argues that the estate incurred expenses since its duly-appointed appraiser, Kramer, also billed for time expended in Court as a Defendant in the lawsuit in which he was named. Kramer was court-appointed in this matter, and his appointment was never challenged by NHIC until the adversary proceeding. The fee arrangement with Kramer was disclosed in Court documents and in writing to NHIC. NHIC's election to sue Kramer caused Kramer to expend time that he would not have expended otherwise. As a result of this litigation, NHIC is therefore responsible for Kramer's fees for time expended in or directly related to the litigation.

In accordance with the foregoing, it is

ORDERED as follows:

1. With respect to the loss of business income award, interest is hereby awarded in the sum of $8,048.70, pursuant to C.R.S. § 5–12–102(1)(a) and (b), calculated to May 15, 1990, based on the statutory rate of 8% per annum, compounded annually, in favor of Tri Systems and against NHIC.

2. With respect to the business property loss claim, interest is hereby awarded in the sum of $1,157.01, calculated to date of payment, March 4, 1985, based on the statutory rate of 8% per annum in favor of Tri Systems and against NHIC.

3. The appraisal award of $17,500.00 fixed by the arbitration panel pursuant to the Policy, less the amount of Kleeman's fee advanced by NHIC, $6,225.00, shall be entered as a judgment of the Court in favor of Tri Systems and against NHIC.

4. Each award of interest shall continue to bear interest from the date of interest calculation cited above, at the statutory rate of 8% per annum, compounded annually, until paid.