In re the **INVESTMENT BANKERS, INC., Debtor.**

James H. **TURNER, Trustee, Plaintiff,**

v.

**DAVIS, GILLENWATER & LYNCH; Gilbert K. Davis, Individually and as a Partner of Davis, Gillenwater & Lynch; and O'Connor & Hannan, a Partnership, Defendants.**

Bankruptcy No. 82–Mc–0500.
Adv. No. 82–M–0087.

United States Bankruptcy Court, D. Colorado.

Aug. 9, 1991.

Maria J. Flora, Bernard L. Zuroff, Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, Colo., for James H. Turner, trustee/plaintiff.

Joe A. Walters, Susan K. Smith, Minneapolis, Minn., for O'Connor & Hannan.

## MEMORANDUM OPINION AND ORDER CONCERNING PRE–JUDGMENT INTEREST, ATTORNEY'S FEES AND COSTS

SIDNEY B. BROOKS, Bankruptcy Judge.

This matter comes before the Court on remand following appeal to the District Court for findings on two issues related to the judgment entered in favor of Plaintiff in this proceeding: (1) prejudgment interest and, (2) attorney's fees and costs.

Plaintiff/Trustee sought recovery of alleged preferential and fraudulent transfers from the Defendants pursuant to 11 U.S.C. §§ 547 and 548.

Essentially, the District Court has instructed the Bankruptcy Court to determine whether or not an award of prejudgment interest and attorney's fees is proper in this adversary proceeding (1) commenced in 1982, and (2) in which judgment was initially entered by the District Court in favor of the Plaintiff and against the Defendants on October 5, 1989. This Court concludes that an award of prejudgment interest and attorney's fees is proper and judgment shall enter accordingly.

These issues have been briefed by the parties and oral arguments made at a hearing before the Court on May 28, 1991. The Court has reviewed the file in this matter and is advised in the premises of the parties' respective positions. The Court makes the following findings of fact and conclusions of law in accordance with the District Court's order.

## BACKGROUND AND PERTINENT FACTS

The Complaint in this proceeding was filed on January 19, 1982 by the duly-appointed Trustee for Debtor The Investment Bankers, Inc. ("IBI"), a broker-dealer subject to the Securities Investors Protection Act, 15 U.S.C. § 78aaa, *et seq.* ("SIPA"). The Complaint asserts claims pursuant to Sections 547 and 548 of the Bankruptcy Code against Defendants O'Connor and Hannan ("O'Connor and Hannan"), Davis, Gillenwater & Lynch ("DG & L"), and Gilbert K. Davis ("Davis"). The claims concern IBI's transfer of funds by four different checks [1] which were received and negotiated by Defendants immediately prior to official notification that IBI was to be liquidated under SIPA. Plaintiff's prayer for relief in the Complaint requested judgment for a total of $87,517.80 "plus interest, costs and attorney's fees ... and such other relief as is just."

At the outset of this proceeding, matters appear to have progressed in a timely manner. O'Connor and Hannan filed their Answer to the Complaint on March 3, 1982. DG & L and Davis filed Answers on March 12, 1982. The Answers included counterclaims to which the Trustee replied on May 24, 1982, renewing his request for judgment in Plaintiff's favor as well as asking for "fees and such other relief as the Court deems appropriate" in relation to the counterclaims asserted.

A trial date was initially set for June 3, 1982. On May 17, 1982, DG & L filed a motion for summary judgment. On May 21, 1982, O'Connor and Hannan filed a motion for separate trials. In conjunction with the Trustee's reply to Defendants' counterclaims, on May 24, 1982 the Trustee requested a two week continuance of the scheduled trial pending the Court's disposition of Defendants' pretrial motions. Defendants did not oppose the Trustee's request.

---

**1.** The four checks at issue, each dated July 10, 1981, the same day as the SIPA liquidation Petition was filed, include: (a) Check # 13417 payable to Davis in the amount of $11,858.00; (b) Check # 13418 payable to O'Connor and Hannan in the amount of $25,659.80; (c) Check # 13419 payable to O'Connor and Hannan in the amount of $25,000.00; and, (d) Check # 13432 payable to Davis and DG & L in the amount of $25,000.00. The Trustee challenged the first two of these items as preferential transfers under Section 547, and the latter two as fraudulent conveyances under Section 548.

At conclusion of the June 3, 1982 hearing on Defendants' motions, the Court reset trial for November 16, 1982. The Court's Order denying Defendants' motions entered on June 4, 1982, followed by a Memorandum Opinion on June 14, 1982 outlining the significant factual issues which the Court found precluded judgment as a matter of law and those which the Court found justified retention of the Trustee's claims against the Defendants as part of a single proceeding. Following this point in the proceedings, a series of motions filed by both DG & L and O'Connor and Hannan effectively delayed trial of the Trustee's claims for the next two years.

On June 14, 1982, DG & L moved to vacate the November 16, 1982 setting because of a scheduling conflict. By Order dated July 2, 1982, the Bankruptcy Court vacated the trial date until further notice. On January 20, 1983, the Court issued a notice of setting for a two-day trial beginning May 18, 1983. On January 31, 1983, DG & L once again moved to vacate the setting. This time DG & L not only had a scheduling conflict, but also asked the Court to hold trial on the Trustee's Complaint in abeyance pending resolution of potential criminal and civil proceedings against IBI's principals. On February 7, 1983, the Trustee filed a pleading which did not object to a limited continuance to accommodate DG & L's scheduling conflict, but did object to an indefinite delay on the grounds asserted by DG & L. A hearing was held on April 11, 1983, at which time the court set aside the scheduled May 18, 1983 trial date for hearing on a related discovery dispute. This dispute concerned the Trustee's request for certain information which DG & L contended was protected by attorney-client privilege and inextricably related to the Fifth Amendment rights of IBI principals whom DG & L had also represented in counseling IBI prior to SIPC's intervention in IBI affairs. The pertinent pleadings on this issue include the Trustee's June 18, 1982 discovery request for information on the nature of legal services DG & L provided IBI in consideration for the payments under challenge as preferential and fraudulent, the Trustee's April 1, 1983 motion to compel DG & L's response, and an April 8, 1983 DG & L motion for protective order. Following hearing on this matter, rescheduled from May 18 to May 19, 1983, Judge Gueck issued a Memorandum Opinion and Order dated May 25, 1983 which granted and denied various portions of the parties' respective discovery motions. 30 B.R. 883. On June 23, 1983, the Court denied DG & L's motion for reconsideration of that Opinion and Order.

During this same period of time, on May 18, 1983, the Court denied O'Connor and Hannan's objection to the Court's jurisdiction based on *Northern Pipe Line Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

The file in this matter discloses no further pleadings or Court activity until February 9, 1984 when a new trial date was set for August 7, 1984. On June 18, 1984, Paul Rubner, then counsel of record for O'Connor and Hannan, moved to withdraw because of certain conflicts created by resignation of one of O'Connor and Hannan's principals. The Court granted Mr. Rubner leave to withdraw on July 23, 1984. The parties nonetheless proceeded with the filing of their pretrial and trial briefs on August 3, 1984, with O'Connor and Hannan now acting *pro se*. Trial commenced on August 7, 1984 as scheduled.

The first matter of business at trial was consideration of Defendants' arguments for dismissal of the proceeding on jurisdictional grounds. The matter was taken under advisement and trial continued until the following day. On August 8 and 9, 1984, witnesses were sworn and evidence presented. At the conclusion of proceedings on August 9, trial was scheduled for completion on December 14, 1984.

On December 6, 1984, O'Connor and Hannan moved for an extended continuance of the December 14, 1984 setting based on an allegedly unexpected scheduling conflict. On December 11, 1984 the Court granted O'Connor and Hannan's motion and reset the remainder of trial for April 5, 1985. Approximately one week before the new setting, O'Connor and Hannan filed another motion. This time O'Connor and Hannan requested an order delay-

ing trial so they could depose the Trustee. They claimed they wanted to present new evidence on certain contracts rejected by the Trustee, an issue which the Trustee challenged as totally unrelated to this proceeding and interposed solely for harassment value. The file reflects no Court action on this matter, but does note the Court's April 1, 1985 Order postponing the April 5 setting until April 12 because of the Court's unavailability.

On April 8, 1985, DG & L moved to continue the new April 12 setting, this time because of yet another scheduling conflict. O'Connor and Hannan joined in DG & L's request for a further continuance. O'Connor and Hannan, however, asked for a minimum three month delay based on their own scheduling conflicts. On April 9, 1985, the Court granted a continuance, with trial to be reset for a date "mutually acceptable to the parties." On April 22, 1985 the Court issued a notice of resetting for July 19, 1985.

Briefs were filed by the Trustee and the Defendants on March 29, and by SIPC on April 8, 1985. Additional pleadings filed at the time of trial included an O'Connor and Hannan trial brief on July 17, a DG & L supplemental trial brief on jurisdictional issues on July 19, and an O'Connor and Hannan motion to dismiss on July 19, 1985. Additional exhibits and witness testimony were received and arguments made during the final phase of trial on July 19, 1985. The Court allowed the parties until August 12 to file further briefs on pertinent issues. O'Connor and Hannan also filed a brief summarizing their closing argument.

On December 10, 1985, Judge Gueck issued a Memorandum Opinion reflecting extensive findings of fact on the claims alleged by the Trustee and concluding that the Trustee had proven his right to relief on all but one of the claims alleged.[2] Judge Gueck nonetheless dismissed the Complaint on jurisdictional grounds because he concluded that bankruptcy judges were without authority to decide SIPA matters.[3] A corresponding judgment dismissing the matter entered on December 19, 1985.

The Trustee appealed the dismissal of the proceeding, as well as Judge Gueck's findings on the Trustee's unsuccessful Section 547 claim against O'Connor and Hannan. DG & L noticed their cross appeal on the Bankruptcy Court's conclusions concerning their liability in the event jurisdiction was found to exist.[4] Neither the Trustee nor the Defendants filed any motion with the Bankruptcy Court for reconsideration or amendment of its judgment prior to appeal.

On October 5, 1989, the District Court issued its written opinion on appeal. The District Court concluded that the Bankruptcy Court in fact had jurisdiction to decide the Trustee's claims and reversed Judge Gueck's dismissal of the Complaint. The District Court also reversed, in part, Judge Gueck's findings and conclusions in favor of O'Connor and Hannan on the Trustee's Section 547 claim against them.[5] The District Court affirmed the balance of the Bankruptcy Court's rulings on liability issues.

**2.** The Bankruptcy Court entered judgment in favor of O'Connor and Hannan on the Trustee's Section 547 claim concerning Check # 13418 in the amount of $25,659.80. The Court found each of the remaining checks at issue subject to avoidance in their entirety.

**3.** In dismissing the Complaint, Judge Gueck invited appeal of his decision, noting that "legal analysis and authority has previously been strained and stretched to save the bankruptcy court system where Congress has failed to act, [and] it is possible that, on appeal, analysis by an appellate court may create authority where I have found none to exist."

**4.** O'Connor and Hannan also attempted to cross appeal issues regarding their liability, but their effort was rejected by Bankruptcy Court Judge Patricia Clark as untimely. The Trustee had successfully argued that O'Connor and Hannan's motion for an extension of time to notice their cross appeal was unjustified under the circumstances and merely a dilatory tactic.

**5.** The District Court found error in the Bankruptcy Court's ruling that the entire payment of $25,659.80 in Check # 13418 to O'Connor and Hannan fell within the Section 547(c)(2) exception to the Trustee's avoidance powers. The District Court concluded that $15,409.22 of this transfer was not excepted from avoidance.

The District Court entered judgment in accordance with its opinion on October 5, 1989. The Trustee subsequently moved for reconsideration and amendment of that judgment to include an award of pre-judgment interest. Defendants raised various arguments challenging the propriety of the Trustee's request. The District Court nonetheless found that the Bankruptcy Court had abused its discretion in not addressing pre-judgment interest in its December 1985 ruling. In an Amended Order dated May 15, 1990, the District Court remanded the proceeding to this Court for specific findings on the issue of pre-judgment interest and for consideration of whether an award of the Trustee's attorney's fees and costs was appropriate or not. The District Court held each of the parties responsible for their own costs incident to the appeal.

DG & L appealed the District Court's Amended Order to the Tenth Circuit, challenging not only the propriety of the Trustee's request for pre-judgment interest, but the District Court's allegedly improper, *sua sponte* consideration of a purportedly unasserted claim for attorney's fees and costs. On December 5, 1990, this appeal was dismissed as premature until the issues remanded to the Bankruptcy Court, deemed by the Tenth Circuit to be substantively significant issues, had been finally decided.

While the DG & L appeal to the Tenth Circuit was pending, O'Connor and Hannan partially satisfied the judgment against them.[6] In accepting payment from O'Connor and Hannan, the Trustee expressly reserved his right to claim additional damages attributable to pre-judgment interest and attorney's fees and costs upon final determination of these issues. There is no indication in the Court's file that Davis or DG & L have made any tender to the

Trustee in satisfaction of the judgment against them.

## PRE-JUDGMENT INTEREST

■ An award of pre-judgment interest is discretionary with the Court in preference proceedings and fraudulent conveyance actions under the Bankruptcy Code. It is generally governed by the rationale that such interest enables the prevailing plaintiff to be made whole in the absence of countervailing equities or statutory prohibition. *See, e.g., In re Suburban Motor Freight, Inc.,* 124 B.R. 984, 1005–1006 (Bankr.S.D.Ohio 1990); *In re Baker & Getty Financial Services, Inc.,* 88 B.R. 792, 800 (Bankr.N.D.Ohio 1988); *In re H.P. King Co., Inc.,* 64 B.R. 487, 488–489 (Bankr.E.D.N.C.1986). *And see generally, Matter of Foreman Industries, Inc.,* 59 B.R. 145, 154–157 (Bankr.S.D.Ohio 1986); *In re Fulghum Constr. Corp.,* 45 B.R. 112, 121–122 (Bankr.M.D.Tenn.1984), *aff'd,* 78 B.R. 146 (M.D.Tenn.1987), *rev'd on other grounds,* 872 F.2d 739 (6th Cir.1989); *In re Independent Clearing House Co.,* 41 B.R. 985, 1015–1016 (Bankr.D.Utah 1984), *aff'd in part and rev'd in part on other grounds sub nom., In re Universal Clearing House Co.,* 62 B.R. 118 (D.Utah 1986). Because claims under Sections 547 and 548 of the Bankruptcy Code are premised solely on federal law, federal law rather than state law controls the issue of whether pre-judgment interest on such claims is appropriate. *See, In re Osage Crude Oil Purchasing, Inc.,* 103 B.R. 256, 263–264 (Bankr.N.D.Okla.1989); *In re H.P. King, supra.*[7] *Accord, Federal Deposit In. Corp. v. Rocket Oil Co.,* 865 F.2d 1158, 1160 (10th Cir.1989), stating the general rule under federal law for awarding pre-judgment interest as follows:

---

**6.** A Partial Satisfaction of Judgment dated September 24, 1990 was filed with the Clerk of the Bankruptcy Court on October 1, 1990. This document reflects O'Connor and Hannan's payment of $15,409.22, $25,000.00, and an additional $837.97 presumably attributable to what the parties deemd appropriate as post-judgment interest.

**7.** Thus, the issues in the pending matter are distinguishable from those addressed by this Court in *In re Tri Systems Consulting & Design, Inc.,* 115 B.R. 279 (Bankr.D.Colo.1990) in which Colorado law was controlling on the issue of pre-judgment interest incident to a state law claim asserted in the context of an adversary proceeding before the Bankruptcy Court. The basic equitable considerations pertinent in *Tri Systems* nonetheless remain relevant here.

[I]nterest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable ... [citations omitted].... In absence of a statutory provision to the contrary, the [trial] court has broad discretion in deciding whether to grant prejudgment interest.

■ Defendants' opposition to the award of pre-judgment interest in this case is premised on three principal arguments: (1) that recovery on claims in a SIPA liquidation proceeding does not encompass recovery of damages over and above the amounts actually found to be preferentially transferred or fraudulently conveyed; (2) that an award of pre-judgment interest is inequitable here because Defendants cannot be considered to have wrongfully retained the funds due the Trustee on his claims at any time prior to ultimate determination of both jurisdictional and liability issues on appeal; and, (3) that such award is inequitable because it is effectively punitive rather than compensatory given the extended delays in final resolution of the Trustee's claims due to circumstances beyond Defendants' control. The Court finds Defendants' arguments factually and legally unsubstantiated.

Defendants rely on, but in this Court's opinion, misconstrue the significance of the Tenth Circuit's decision in *FDIC v. Rocket Oil, supra.* Defendants mistakenly rely on this case as supportive of their the contention that pre-judgment interest is inappropriate in SIPA liquidations in the context at issue here. *Rocket Oil* does not hold that pre-judgment interest is prohibited or unwarranted in recovery actions incident to any and all statutory liquidation proceedings under federal law, nor does it negate assessment of pre-judgment interest as a compensatory measure in appropriate circumstances. The Tenth Circuit concluded in *Rocket Oil* only that the trial court did not abuse its discretion in denying an award of interest under the circumstances, *i.e.,* where the applicable federal statute, the National Bank Act, provided no right to such interest in restitution actions brought by the FDIC in accordance with their statutory duty to liquidate a troubled financial institution.

While the ultimate objectives of SIPA are analogous to those of the National Bank Act in terms of garnering assets for purposes of liquidation and distribution, SIPA is substantively distinguishable. By its terms, SIPA mandates that liquidations under SIPA proceed in accordance with the provisions of Title 11. *See,* 15 U.S.C. §§ 78eee(b) and 78fff(b). SIPA explicitly invests a court-appointed trustee in a SIPA liquidation with the duties and powers of a trustee under Title 11. *See generally,* 15 U.S.C. § 78fff–1. These duties and powers necessarily include the avoidance of transfers which fall within the scope of Sections 547 and 548 of the Code. *See,* 15 U.S.C. §§ 78fff–1(a) and 78fff–1(b). *See also, In re Mirus,* 87 B.R. 960, 968–969 (Bankr. N.D.Ill.1988). Pertinent judicial decisions generally support a trustee's entitlement to pre-judgment interest in recovering on such claims. *See, In re Suburban Motor Freight,* 124 B.R. at 1006.

■ This entitlement is not defeated by SIPA. SIPA must be read together with the pertinent provisions of the Bankruptcy Code, not in isolation or as an entirely separate statutory scheme. *See, In re Mirus,* 87 B.R. 960, 968 (Bankr.N.D.Ill.1988). The provisions of the Code are superceded by SIPA in a SIPA liquidation only where inconsistent with SIPA's objectives. *Id.* at 969. *See also, S.E.C. v. Wick,* 360 F.Supp. 312 (N.D.Ill.1973) (bankruptcy provisions governing the liquidation of an insolvent broker-dealer are not superceded by SIPA unless they frustrate SIPC's ability to protect customer funds). *Cf. In re Government Securities Corp.,* 90 B.R. 539, 542–543 (Bankr.S.D.Fla.1988) (awarding interest on customer claims in SIPA bankruptcy liquidation is contrary to bankruptcy policy because it penalizes the trustee and the creditors of the estate, and there is no SIPA provision which is inconsistent with such policy). *Accord, Securities Investor Protection Corp., v. Ambassador Church Finance/Development Group, Inc.,* 788

F.2d 1208 (6th Cir.1986) (SIPA's lack of authorization for payment of interest on customer claims is consistent with pertinent bankruptcy law). The Court finds no inconsistency between SIPA and the general availability of pre-judgment interest in preference and fraudulent conveyance actions which precludes an award of pre-judgment interest on the Trustee's successful claims in this case.

▪ The fact that delay in final resolution of a Section 547 or 548 claim may increase the amount of pre-judgment interest ultimately included as part of a final judgment is generally irrelevant, as are the reasons for any such delay, other than in assessing the equities relevant to an award of pre-judgment interest. *See, In re Fulghum Constr., supra; In re Osage Crude Oil, supra. But see, In re Art Shirt, Ltd.,* 93 B.R. 333, 341–342 (Bankr.E.D.Pa.1988) (bankruptcy court did not abuse its discretion in refusing to award pre-judgment interest to trustee in preference action where defendant was not responsible for delays in the proceeding).

▪ In the instant action, it could be persuasively argued that, indeed, the equities bode for an award of interest, in part, due to the extended and repeated delays in this case occasioned at the specific requests of these Defendants. This ten-year case reflects that these Defendants filed about seven motions to continue or vacate trial or pre-trial dates, and the Bankruptcy Court granted continuances on six occasions, all prior to its entry of judgment, after trial, on December 19, 1985. Due to these delays, it took almost four years for the parties to get to trial. The intermittent and intervening appeals, largely those of these Defendants, added another five years to the case.

▪ In actions brought pursuant to Sections 547 and 548 of the Bankruptcy Code, pre-judgment interest is deemed compensatory, not punitive. *See, In re Fulghum Construction, supra.* The factor for which is compensates is time and value over time of the amount recovered through avoidance of the transfers at issue. *See, In re Mirus, supra; In re Foreman,* 59 B.R. at 156. *See also, In re Art Shirt Ltd., supra* (interest compensates estate for inability to use property during time in was in hands of transferee). *Accord, In re Osage Crude Oil, supra.*

The language of Section 550 as well as that of Section 541(a)(3) reinforces the compensatory nature of pre-judgment interest. These provisions of the Bankruptcy Code specifically enable the Trustee to recover not merely the actual property transferred in violation of Sections 547 and 548, but afford the Court discretion in allowing the Trustee to recover *the value of the property* at issue for inclusion as property of the estate upon recovery. *See, In re Suburban Motor Freight,* 124 B.R. at 1005, n. 20; *In re Foreman,* 59 B.R. at 155; *In re Fulghum Construction,* 45 B.R. at 121, n. 8. *See also, In re Bridge,* 106 B.R. 474 (Bankr.E.D.Mich.1989) (applying interest principles pertinent under Sections 547 and 548 to claims in a Section 542 proceeding).

The Court finds no facts in this case which preclude an award of pre-judgment interest because it is unfair or punitive. Defendants were on notice of the Trustee's claim for interest at all times since the original Complaint in this proceeding was filed.[8] While the delays in this proceeding have been significant, Defendants contend these delays were no one's fault. There clearly is no showing whatsoever that the Trustee was in any way responsible for unjustifiably delaying resolution of this

---

**8.** The Trustee's failure to specifically raise the issue immediately after entry of the Bankruptcy Court's order of judgment is understandable given the Court's dismissal of the Complaint, a situation clearly distinguishable from that in *Garcia v. Burlington Northern R. Co.,* 818 F.2d 713 (10th Cir.1987), where the plaintiff prevailed in the first instance. *Cf. In re Bernhardy,* 103 B.R. 198 (Bankr.N.D.Ill.1989) (request for fees and costs by debtor in dischargeability pro-

ceeding after disposition on appeal held timely where general language of prayer for relief apprised creditor of such claim and claim was otherwise allowed by statute). More significantly, however, the District Court has already implicitly rejected Defendants' arguments on this issue in finding that the Bankruptcy Court abused its discretion in not addressing pre-judgment interest in making its initial findings on the Trustee's claims.

matter as a means of increasing his recovery at Defendants' expense.[9] Furthermore, there is no evidence of any prejudice to Defendants due to the delays which have been encountered. Defendants have in fact benefitted from each delay along the line, both prior to trial and on appeal. So long as judgment did not enter against them, Defendants continued to avoid responsibility for return of the funds at issue and were thus able to retain the full use and benefit of those funds at the expense of the Trustee and IBI's other creditors.

Delay in resolution of this proceeding has prejudiced only the Trustee, who has been deprived of funds to which he has ultimately established his legal entitlement on behalf of the estate and its creditors. Defendants at the same time have been enriched by their retention of these funds for approximately nine years since the Complaint in this proceeding was filed. The equities here clearly weigh in favor of the Trustee. As summarized by the court in *In re H.P. King Co.*, quoting from the decision in *Foreman,*

> [I]f litigation to recover a prefiling transfer is successful, recovering only the amount originally transferred is not adequate. Not only would the one creditor have received one hundred per cent (100%) of the amount owed by the debtor, but the creditor would also have had control and use of the property transferred, including the opportunity to simply invest the amount in question until any litigation concerning the transfer was concluded—a situation which would not be true for other creditors. At the same time, the debtor's estate would have been deprived not only of the property transferred, to which it was rightfully entitled, but also the control and use of the

property, particularly for investment purposes. In such a situation, all creditors and claimants of the estate would have had the amount they were entitled to receive diminished not merely by the wrongful transfer of the funds, but also by the continued retention of those funds. The wrongful retention of those funds can be redressed by an award of pre-judgment interest. The awarding of pre-judgment interest is compensatory. It compensates the debtor's entire estate for the use of those funds for the period of time that they were wrongfully withheld from the estate. *In re H.P. King Co., Inc.*, 64 B.R. at 489, citing *In re Foreman Industries, supra.*

Defendants resist accounting for the incidental benefit they realized in retaining the funds at issue, claiming that their retention of the funds during the period prior to the District Court's decision on appeal was not wrongful. They reason that their conduct was not wrongful because they had no legal obligation to return the funds until ordered to do so by a court with the necessary jurisdiction to determine their liability. Defendants' arguments on this point are unpersuasive. The Trustee elected to pursue claims against Defendants premised on Sections 547 and 548 in 1982, placing Defendants on clear notice that their receipt and retention of the funds at issue was alleged to be wrongful by virtue of these statutory provisions. Judgment has entered in favor of the Trustee on each of his claims. Thus, Defendants' retention of the funds prior to such judgment is deemed wrongful for purposes of assessing pre-judgment interest, regardless of the fact that Defendants contested liability and defended against the Trustee's claims both at trial and on appeal.[10]

---

**9.** On the contrary, the Court finds Defendants' conduct suspect in relation to the series of extended delays in this proceeding prior to trial given Defendants' repeated motions for continuance, more often than not on the eve of a new trial setting. The Court nonetheless is reluctant to impute responsibility for these delays to Defendants' improper motivation based on the limited evidence in the record available for consideration, and notes that there is no evidence of

any party's responsibility for the lengthy appellate period in this matter.

**10.** ˙Defendants' subjective motivation is largely irrelevant, but nonetheless subject to question. Although the Bankruptcy Court's December 10, 1985 Memorandum Opinion reflects no finding that Defendants acted with specific knowledge that a SIPA liquidation was imminent at the time they received and negotiated the checks at issue, this Court finds Defendants' contention that they had no actual notice of such fact of

■ Under the circumstances in this case, the Court finds it appropriate to award the Trustee pre-judgment interest on those amounts found to have been preferentially transferred and fraudulently conveyed to Defendants. Because there is no evidence in the record that the Trustee demanded Defendants' return of these funds prior to filing the Complaint,[11] the Court finds January 19, 1982 the appropriate date on which such interest began to accrue. *See, In re Suburban Motor Freight, supra; In re Baker & Getty Financial Services,* 88 B.R. at 800; *In re Independent Clearing House, supra; In re Art Shirt Ltd.,* 93 B.R. at 342; *In re Foreman,* 59 B.R. at 156.

■ In light of the Tenth Circuit's conclusions concerning the premature nature of DG & L's further appeal of this matter prior to determination of the issues remanded to this Court, the judgment date for purposes of differentiating between pre-judgment and post-judgment interest is clearly the date on which this Court's judgment on remand becomes final. *See, Ashland Oil Inc. v. Phillips Petroleum Co.,* 607 F.2d 335 (10th Cir.1979) (where appellate reversal is on significant grounds, final judgment date for purposes of interest calculation is date of judgment on remand). *See also, Northern Natural Gas Co. v. Hegler,* 818 F.2d 730, 736–37 (10th Cir. 1987) (date of original trial court judgment is determinative where grounds for reversal are not significant). *Cf. Matter of*

*Commercial Contractors, Inc.,* 771 F.2d 1373, 1375 (10th Cir.1985) (district court decision on appeal from a bankruptcy's judge's final order is not itself final for purposes of further appeal if the decision remands the case to the bankruptcy judge for significant further proceedings). Thus, pre-judgment interest in this case must be assessed at an appropriate interest rate from January 19, 1982 through the date on which this Court's order and judgment on remand becomes final, or, in the case of O'Connor and Hannan, through the date on which they satisfied the underlying judgment against them.

■ Determination of an appropriate interest rate, while generally discretionary with the Court, is nonetheless governed by principles of federal law. *See, In re Osage, supra; In re Baker & Getty Financial Svcs., supra; In re H.P. King, supra.* Other courts faced with this issue have relied on 28 U.S.C. § 1961 pertaining to post-judgment interest for guidance, *See e.g., In re Suburban Motor Freight, supra; In re Baker & Getty Financial Svcs., supra; In re H.P. King, supra,* as does the Trustee in this case without objection by Defendants.

■ There is some authority which concludes that the interest rate under Section 1961 immediately prior to entry of judgment is the appropriate measure of pre-judgment interest. *See, e.g., In re Suburban Motor Freight, supra.* This Court,

---

minimal redeeming value in relation to the ultimate wrongfulness of Defendants' conduct. Defendants, admittedly acting as counsel to IBI and its principals in relation to threatened action by SIPA authorities, clearly had reason to anticipate the action ultimately taken by SIPC, even if they questioned the legitimacy of such action. These circumstances at minimum raise an inference that Defendants relied, at least in part, on the potential for SIPA liquidation proceedings as a significant reason for immediately cashing the checks they received from IBI, even though they may also have had a number of good faith defenses to subsequent claims for recovery of those funds by the Trustee under Sections 547 and 548.

**11.** Intentionally wrongful or fraudulent conduct, even without a pre-litigation demand for return of property subject to avoidance, may justify accrual of pre-judgment interest from the

date of transfer rather than the date on which legal action is commenced in proper circumstances. *See, In re Independent Clearing House, supra.* While the facts in this case suggest that Defendants knew of the impending SIPA liquidation proceeding at the time the funds at issue were transferred, there are no specific findings to such effect in the Court's December 1985 Memorandum Opinion. Because this Court does not have benefit of the same first-hand observation of trial witnesses as Judge Gueck did in making those findings, it is reluctant to go beyond those findings for purposes of extending the pre-judgment interest period. The six-month difference between the date of the transfers and the date on which the Complaint was filed is relatively insignificant in comparison to the total time period at issue in any event.

however, finds the interest rate proposed by the Trustee, *i.e.*, one premised on the rate in effect under Section 1961 as of the date the Complaint was filed, as more suitable in this case given the extended period of time since this proceeding was first commenced and the primary rationale for awarding pre-judgment interest in the first instance, namely to fairly compensate the Trustee for the value of property over the period of time in which it was wrongfully retained by another. The Court therefore adopts the interest rate proposed by the Trustee as applicable here, finding the pertinent rate under 28 U.S.C. § 1961 in January 1982 to be the 8% rate in effect under applicable Colorado law as then incorporated in Section 1961. Post-judgment interest, however, shall accrue at the interest rate currently applicable under 28 U.S.C. § 1961, until the judgments at issue, an all pre-judgment interest thereon, are satisfied in full.

## COSTS AND ATTORNEY'S FEES

Bankruptcy Rule 7054(b) governs the award of costs to the prevailing party in an adversary proceeding. This rule states, in pertinent part:

The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provide.

█ In bankruptcy proceedings, unlike other matters litigated under federal law, there is no presumption that costs be taxed to the unsuccessful party. *See generally,* 9 *Collier on Bankruptcy,* ¶ 7054.07 at p. 7054–8 (15th ed. 1990). *And see,* Rule 54(d), Fed.R.Civ.P., which is not incorporated by reference in bankruptcy proceedings under Bankruptcy Rule 7054.

█ An award of costs to a successful plaintiff is discretionary with the Court in all instances. It is essentially compensatory, but, like pre-judgment interest, is not warranted in all cases on this basis alone.

█ Attorney's fees as a general rule are neither taxable as costs nor recoverable as an element of damages, compensatory or punitive, except in three specific

situations: (1) a contractual provision for the allowance of reasonable attorney's fees; (2) the power of the court to make awards where equitable, such as attorney's fees awarded out of the fund created as part of a judgment or settlement of a class action; and, (3) a statute or rule providing for the award of attorney's fees, such as Bankruptcy Rule 9011. *See, Collier on Bankruptcy, supra,* ¶ 7054.07 at pp. 7054–8, 9. *See also, In re Seaway Exp. Corp.,* 105 B.R. 28, 32 (9th Cir.BAP 1989), *aff'd* 912 F.2d 1125 (9th Cir.1990) (attorney's fees generally denied where successfully litigated right is derived under bankruptcy law as opposed to state law). An award of costs or attorney's fees, however, is not precluded merely because a request for recovery of such items is not specified as a separate claim for relief by a successful plaintiff. *Cf. In re Bernhardy, supra.*

█ The Court finds that an award of costs and fees to the Trustee is not appropriate under the circumstances in this case. Any costs incident to pursuit of the Trustee's claims do not become Defendants' costs merely because Defendants were unsuccessful in defending against those claims. On the contrary, the costs attributable to the Trustee's pursuit of this action are properly borne by the estate as an administrative expense. The Trustee's claims under Section 547 and 548 are essentially elective claims. The Trustee must make the decision to pursue them if deemed appropriate, or may forego such claims if the potential benefit to the estate is insubstantial or too uncertain to warrant expenditure of the estate's resources. Unless and until the Trustee elects to assert such claims, there is no imposition of automatic liability on Defendants which renders actual litigation unnecessary, or which justifies imposing the costs of such litigation on Defendants who are ultimately unsuccessful notwithstanding their dogged persistence in the assertion of good faith defenses.

The findings and conclusions made by each of the various courts involved in this proceeding to date substantiate Defendants' contention that the legal and factual

issues underlying the parties' litigation are significant, have been hotly contested, and clearly are subject to legitimate differences in opinion. There is no evidence in the record that Defendants' pleadings or arguments have been frivolous or raised in other than good faith defense to the Trustee's claims, notwithstanding the ongoing delays in finally pursuing those defensive arguments with evidence at trial.

The fact that O'Connor and Hannan acted *pro se* after withdrawal of their former counsel in and of itself does not make them equitably or legally accountable for attorney's fees incurred by the Trustee merely because the Trustee did not also act *pro se.* Any delays arguably attributable to Defendants' purportedly dilatory tactics are already redressed by compensation in the form of pre-judgment interest and there is no showing here that the Trustee has been otherwise unfairly prejudiced by such delays in terms of unneccessarily incurred or excessive attorney's fees. This Court finds no sound basis for sanctioning Defendants' conduct of this litigation, and thus finds no justification for an award of attorney's fees to the Trustee.

## ORDER

In accordance with the foregoing findings and conclusions, the Court hereby orders that:

1. Plaintiff-Trustee is awarded pre-judgment interest on his successful preferential transfer and fraudulent conveyance claims against Defendants O'Connor and Hannan, Gilbert K. Davis, and Davis, Gillenwater & Lynch.

2. As to the Trustee's claims against Gilbert K. Davis and Davis, Gillenwater & Lynch, pre-judgment interest shall be accrued as of January 19, 1982 through the date on which this order becomes final, at the rate of 8% per annum.

3. As to the Trustee's claims against O'Connor and Hannan, pre-judgment interest shall be calculated at the rate of 8% per annum and as first accruing as of January 19, 1982, and

as continuing to accrue through the date on which judgment against O'Connor and Hannan on the underlying claims was first satisfied, crediting any additional amount tendered to the Trustee as interest on the amounts so paid against the total pre-judgment interest calculated to be due on such sum.

4. Post-judgment interest shall apply to any portion of the judgments against O'Connor and Hannan, Gilbert K. Davis, and Davis, Gillenwater & Lynch, including pre-judgment interest, which remains unsatisfied, at the rate currently applicable under 28 U.S.C. Section 1961.

5. Each party in this matter shall bear their own costs and attorney's fees.